825 A.2d 1055

Gerald Ballard SMITH

v.

STATE of Maryland.

No. 128, Sept. Term, 2002.

Court of Appeals of Maryland.

June 12, 2003.

Craig M. Kadish, Baltimore, for appellant.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued Before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

On January 18, 2002, Gerald Ballard Smith, appellant, was arrested in Washington County, Maryland and charged with various controlled dangerous substance offenses, including possession of cocaine with intent to distribute. Partly as a result of certain negotiations with the State, some of the charges were dropped. On June 18, 2002, appellant was tried on the remaining charges in a court trial. Following the conclusion of all testimony and argument, he was found guilty of possession of cocaine with intent to distribute. Immediately following the verdict, the parties proceeded to sentencing.

Appellant, a subsequent offender, received the mandatory minimum sentence of ten years without the possibility of parole. On July 16, 2002, appellant filed a notice of appeal. On February 26, 2003, we, on our own initiative, granted a writ of certiorari to resolve the following issue:

"1. Was Appellant's waiver of his right to be tried by jury, said right embodied in the Sixth Amendment as well as Article 21 of the Maryland Declaration of Rights, proper where the trial judge, prior to Appellant's waiver, unequivocally stated that he would impose a harsher sentence if Appellant were found guilty after a jury trial, as opposed to a court trial."

We hold that appellant's waiver of his right to be tried by jury was proper, based upon the facts of the case *sub judice*. The trial judge's statement was ambiguous, not unequivocal, and, most importantly, was made after appellant's counsel had initially indicated, without objection from his client,[1] that the appellant had already chosen to waive his constitutional right to a jury trial.

## I. Facts

Subsequent to his arrest, appellant was charged with five counts including possession with intent to distribute a controlled dangerous substance, simple possession, two counts of importation into the State of large quantities of controlled dangerous substances and conspiracy to distribute a controlled dangerous substance. The State, appellee, served appellant with notice that the prosecution would seek to have appellant sentenced as a subsequent offender.[2]

---

1. The State raises a preservation issue. In light of our decision in this case we do not need to resolve it.

2. Pursuant to Maryland Rule 4–245 and Maryland Code, Article 27, Section 293, the offenses appellant was charged with in the case at bar made appellant a second or subsequent controlled dangerous substance offender punishable by a term of imprisonment twice that otherwise authorized, by twice the fine otherwise authorized, or both. Appellant was convicted on December 16, 1998, in Washington County, Maryland, of conspiracy to distribute cocaine and, therefore, due to his

At the outset of the proceedings, appellant's counsel indicated to the court that appellant would waive a trial by jury in return for a maximum sentence of ten years without parole if appellant were to be convicted by the court, which, based upon his status as a subsequent offender was the minimum sentence appellant could have received if he was found guilty of the charges that would remain pending against him pursuant to his agreement with the State. The trial judge was informed that a part of the agreement between the State and the defendant included the dropping of other charges and a second judge's agreement to sentence defendant to a concurrent period of incarceration on a violation of probation charge. The following dialogue occurred on the record:

"[PROSECUTOR]: Gerald Smith. [Defense Counsel] and I have been trying to reach Judge Boone about an ancillary issue in this case regarding waiver of a jury trial. We are ready to start.

"THE COURT: Are you ready to it do here?

"[PROSECUTOR]: I'm ready to go here.

"[DEFENSE COUNSEL]: We're ready to go, your Honor, with the assent of Judge Boone. *My client's agreement to waive jury trial and proceed in this matter was premised upon the cap of 10 and of course the minimum is 10 in the case he has here and Judge Boone running any violation of probation, which is a maximum of I think 33 months concurrent with the 10.* We don't think it is a problem. We don't foresee it. We just wanted to run down the hall. We've tried twice today and we have missed Judge Boone both times.

"THE COURT: I don't know what you are going to do. I'm not ... I don't want you to do anything that's going to ... I'm willing to be part of a case that's waived jury and proceed to court trial, but I don't think you should ... I'm not going to be part of any sentence that involves another judge.

current charges, is subject to a mandatory sentence of not less than ten years imprisonment no portion of which may be suspended.

"[DEFENSE COUNSEL]: We're not asking you to be part of it, Judge ...

"THE COURT: Well you are because you are asking him [Judge Boone] to make a decision before you try this case.

"[DEFENSE COUNSEL]: Actually, your Honor, we are only asking him that if we try the case and he's found guilty, will he be inclined to run the sentence concurrent. We're not asking him to do ... *not asking you to do anything other than what we've asked you to do.*[3] We're certainly not asking Judge Boone to do anything other than give him the time, but make it concurrent. It's real simply. In exchange ...

"THE COURT: That simple here, but we are going to go with this. I don't care what he does. *If he wishes to waive a trial by jury and proceed to elect trial by court, we go.*

"[DEFENSE COUNSEL]: *And he will do that* provided all the things that [the prosecutor] and I spoke about fall into place for him.[4] I've had a very difficult time in arranging trial by jury. It's been ... It's been somewhat of a conflict. I will admit my client has really wanted a trial by jury *but he's agreed in exchange for receiving certain consideration from the Court, not just from your Honor, but from Judge Boone, he would proceed in this manner.* I will be putting something to that effect on the record for post-conviction reasons, your Honor regarding how we are proceeding here today.

"THE COURT: *Well he certainly will make a better decision, I think, as far as sentencing is concerned, if he is found guilty by the Court than if he is found guilty by a jury.*

---

**3.** At this point the trial court had already been informed of appellant's desire to waive his right to be tried by jury in return for a cap on the sentences.

**4.** They did fall in place: charges were dropped, the trial judge capped the sentence and Judge Boone agreed to a concurrent sentence on the violation of probation.

"[DEFENSE COUNSEL]: And I have absolutely advised him of that. He knows that your Honor. And I think that is the reason we intend to proceed in this manner. I would ask the Court's indulgence for three minutes to go down the hall.

"THE COURT: Okay, sure. Go right ahead." [Alterations added.][Emphasis added.]

The proceedings resumed ten minutes later. The prosecutor agreed to go forward with a single count of possession with intent to distribute cocaine and entered a *nolle prosequi* of the remaining counts.[5] Appellant's counsel then conducted a more formal litany in respect to the waiver of the right to a jury trial to establish the knowing and voluntary nature of the waiver that had already been made. The following ensued on the record:

"[DEFENSE COUNSEL]: We are prepared to proceed with a bench trial. Now by proceeding this way, Mr. Smith, you understand you are waiving your right to a jury trial. You could have had a jury. It would have consisted of 12 people who I would have helped select and you have helped select and the State's Attorney would have participated in the selection. Those people would have been seated here and they would have had to find you guilty beyond a reasonable doubt to a moral certainty and by unanimous verdict. Even just one of those people determined that you were not guilty, that could be a hung jury and you would not be convicted. Do you understand that is not going to happen? You're going to have a trial here before Judge Wright and he's going to apply the same standard, beyond a reasonable doubt, to the two counts that are still remaining, but there will be no particular jury seated. You understand that?

---

5. The parties' briefs indicate that the prosecutor proceeded on a single count but that the trial judge may have rendered verdicts on two counts, one verdict being guilty as to possession of powder cocaine and the other verdict being not guilty as to possession of "crack" cocaine. We need not resolve the conflict in that we are addressing only the charge for which a guilty verdict was entered.

"MR. SMITH: Yes I understand.

"[DEFENSE COUNSEL]: Are you willing to proceed in this matter? And let me preface this by saying that in exchange for proceeding in this manner and not having a jury seated in this case, that the Court has agreed to cap its sentence at 10 years executed time, 10 years period and it's a 10 year minimum mandatory. You understand that the State has filed for that. And Judge Boone, who is the judge you are on probation to, has agreed, solely because you are proceeding in this manner, that he will run any violation of probation time which he gives you concurrent, meaning at the same time, as any time you would get if you were found guilty in front of Judge Wright. Other ... Okay now do you agree to proceed in that manner?

"MR. SMITH: Yes.

"[DEFENSE COUNSEL]: And has any ... *Other than what I have put on the record, has anyone promised you anything or threatened you in any manner to give up your right to a trial by jury, other than the representations of Judge Wright that 10 years is your max on this and Judge Boone's representation that he'll run any time on your violation of probation concurrent with any sentence that you might get from Judge Wright?*

"MR. SMITH: May I ask you a question?

"[DEFENSE COUNSEL]: Absolutely. You can ask on the record or in private, either one. (Pause while the defendant speaks to counsel.) I apologize to your Honor.

"THE COURT: That's all right. That's all right. No problem. (Pause continues.) Off the record. On the record.

"[DEFENSE COUNSEL]: Now Mr. Smith we just had a conversation off the record and it is my understanding that based upon our conversation, you understand what is going on here today, correct?

"MR. SMITH: Yes sir.

"[DEFENSE COUNSEL]: You are not under the influence of any drugs, alcohol or prescription medication, correct?

"MR. SMITH: No.

"[DEFENSE COUNSEL]: You are not under the care of any psychologist or any psychiatrist for any mental illness that would impair your ability to understand what I am saying to you right now, right?

"MR. SMITH: No.

. . .

"[DEFENSE COUNSEL]: And you understand that you are giving up the right to a jury trial. And in exchange for giving up your jury trial right and proceeding with a bench trial, meaning a trial in front of Judge Wright, you are getting essentially a cap of 10 years, period, not executed/unexecuted. It doesn't matter because it's a mandatory 10. If you are convicted you are getting 10 years. Judge Wright has agreed not to go over that and Judge Boone has agreed, because you're not wasting a jury, that you will get your three years running at the same time as any sentence you would get in front of Judge Wright. You understand that?

"MR. SMITH: Yes.

"[DEFENSE COUNSEL]: *Are you doing that freely and voluntarily?*

"MR. SMITH: Yes.

"[DEFENSE COUNSEL]: *Is that what you want to do?*

"MR. SMITH: Yes.

"THE COURT: That includes the State's willingness to dismiss the importation charge which carries how much time?

"[PROSECUTOR]: 25.

"THE COURT: 25 years per count.

"[DEFENSE COUNSEL]: You understand in addition
. . .

"THE COURT: So your lawyer is, [the defense counsel] has really worked up something here that is extraordinary to your benefit, but you don't have to take it if you don't want to.

"[DEFENSE COUNSEL]: *Do you understand everything that is happening now?*

"MR. SMITH: Yes.

"[DEFENSE COUNSEL]: Are you satisfied with the services of me and my office in representing you in this matter?

"MR. SMITH: Yes.

"[DEFENSE COUNSEL]: Have we done everything you've asked us to do?

"MR. SMITH: Yes.

"[DEFENSE COUNSEL]: Okay. Now just for the record, your Honor, and for the purposes of post-conviction, I rarely do this, but for the record, I do want to put it on the record that, while I understand that you really have no negatives in terms of, I supposed, of trying this case in light of the proceedings, *it was my recommendation to you that you accept the plea in this matter.* You understand that? You understand? We talked about that at length several times.

"MR. SMITH: Yes.

"[DEFENSE COUNSEL]: *And you agreed to proceed against the advice of counsel and try this case, correct?*

"MR. SMITH: Yes.

"[DEFENSE COUNSEL]: Very well your Honor.

"THE COURT: All right, the Court will accept your election of trial by court as being an intelligent and knowing decision." [Alterations added.] [Emphasis added.]

After this exchange, appellant's court trial commenced. Appellee adduced evidence that on January 18, 2002 at 7:30 p.m., appellant arrived on the parking lot of a local fast food restaurant. Agents of the United States Drug Enforcement Administration (DEA) and police officers assigned to the

Washington County Narcotics Task Force, apprehended appellant who had an outstanding bench warrant for failure to appear. As the DEA agents and officers moved and attempted to arrest appellant, he ran. While running, appellant threw away a plastic baggie, which was subsequently recovered and found to contain approximately 50 grams of powder cocaine. A second baggie, containing approximately 28 grams of crack cocaine was also found nearby. Appellant was apprehended and charged with various narcotics offenses.

At the conclusion of the State's evidence, appellant's counsel made a motion for judgment of acquittal. Judge Wright denied appellant's motion. Appellant's counsel called no witnesses and renewed the motion for judgment of acquittal. Again, this motion was denied. Judge Wright found appellant guilty of possession of powered cocaine with the intent to distribute, but not guilty of possession of crack cocaine.

Appellant's sentencing followed and Judge Wright imposed a sentence of ten years without the possibility of parole and, at sentencing, stated, "if you [appellant] had gone to trial by jury and [been] convicted, with your background, you would have probably gotten at least 20 years." (alterations added).[6]

---

**6.** Had he gone to trial without the benefits he received as a part of the bargain with the State and been convicted of the dropped counts, he would have been exposed to much greater sentences. He was also charged with two counts of violating Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.) Article 27, § 286A for which the penalty is:

"(b) *Penalty.*—(1) A person convicted of violating subsection (a)(1) of this section is guilty of a felony and may be fined not more than $50,000 or imprisoned for not more than 25 years, or both fined and imprisoned in the discretion of the court. . . ."

Additionally, he was charged with one count of violating Article 27, § 290, which provides:

"**Attempts, endeavors and conspiracies.**

Except as provided otherwise under this subheading, any person who attempts, endeavors or conspires to commit any offense defined in this subheading is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt, endeavor or conspiracy."

## II. Discussion

In *Peters v. State*, 187 Md. 7, 20, 48 A.2d 586, 592 (1946), the concurring opinion stated:

"In Maryland from early times, unlike many other jurisdictions, the constitutional right of trial by jury could be, and now commonly is, waived by the accused even in capital cases. In this respect there is no difference between the right of trial by jury at common law or under the Constitution of 1776 and the right under the Constitution of 1851 and the subsequent constitutions containing provision that the jury shall be the judges of law and the facts. This right may be waived without statutory provisions for procedure. By such waiver the constitutional provision that the jury shall be the judges of the law and the facts ceases to be a. constitutional right but (in the absence of other legislative provision) is applied by analogy, as a procedural provision, to trial judges sitting 'as a jury,' as if they were actually a jury."

More recently, in *Galloway v. State*, 371 Md. 379, 399, 809 A.2d 653, 665 (2002), we opined that " 'A defendant may waive his right to a jury trial and elect instead to be tried by the court.' " (quoting *Martinez v. State*, 309 Md. 124, 131, 522 A.2d 950, 953 (1987)).

The Court of Special Appeals has also noted that:

"A criminal defendant's right to a jury trial is as fundamental as the maxim—innocent until proven guilty. It is guaranteed by the Constitution of the United States, U.S. Const.Amend. VI,[7] applicable to the States through the

---

Moreover, but for the agreement, pursuant to the Article 27, § 293, appellant, as a subsequent offender, was arguably exposed to an even more severe sentence. Section 293 provides:

" § 293. Second or subsequent offenses.

(a) *More severe sentence.*—Any person convicted of any offense under this subheading is, if the offense is a second or subsequent offense, punishable by a term of imprisonment twice that authorized, by twice the fine otherwise authorized, or by both. . . ."

Therefore, had appellant been convicted of the additional charges he could have been sentenced to at least 50 additional years in prison.

**7.** The Sixth Amendment to the United States Constitution provides that:

Fourteenth Amendment,[8] and by the Maryland Declaration of Rights, Arts. 5, 21 and 24.[9] *However, this right may be waived, as when the defendant pleads guilty ... or elects to be tried by a judge.* 'To satisfy constitutional due process standards, the waiver of the right to a jury trial must constitute an intentional relinquishment or abandonment of a known right or privilege.' "

*Epps v. State,* 52 Md.App. 308, 311–12, 450 A.2d 913, 915–16 (1982) (citations omitted) (footnotes added). It is well-settled that the right to a jury trial may be waived either by entering a guilty plea, or by a criminal defendant's election to be tried by a judge in accordance with Maryland Rule 4–246, discussed *infra.*

Generally, constitutional rights can be waived. In a case where a criminal defendant, as a result of a negotiation with the prosecutor enters a guilty plea, the defendant may bargain away significant constitutional rights, including not only the right to trial by jury, but also the rights to confront witnesses and to be free from self-incrimination. *See Brookhart v. Janis,* 384 U.S. 1, 7–8, 86 S.Ct. 1245, 1248–49, 16 L.Ed.2d 314, 318–19 (1966) (stating that a defendant personally must waive the right to plead not guilty because that right encompasses the right to jury trial, the right to confront opposing witnesses and the privilege again self-incrimination);

---

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed; which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence."

8. *See Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491, 496 (1968).

9. The relevant portions of Articles 5, 21 and 24 of the Maryland Declaration of Rights state that "That the Inhabitants of Maryland are entitled to ... the trial by jury," and "That in all criminal prosecutions, every man hath a right to ... a speedy trial by an impartial jury," and "That no man ought to be ... imprisoned ... but by the judgment of his peers."

*see also Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279–80 (1969); *Sutton v. State,* 289 Md. 359, 364–65, 424 A.2d 755, 758–59 (1981). A defendant can also waive the Sixth Amendment right to assistance of counsel. *See Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, (1938). In *Cubbage v. State,* 304 Md. 237, 241, 498 A.2d 632, 634–35 (1985), in holding that a defendant can waive the statutory right to appeal a criminal conviction in exchange for a favorable sentence, we stated:

"Just as constitutional rights may be waived, so may nonconstitutional rights be waived. *See, e.g., State v. Magwood,* 290 Md. 615, 619 n. 2, 432 A.2d 446, 448 n. 2 (1981)('[T]here are few, if any instances where a criminal defendant is prohibited from surrendering his rights, *be they constitutional or otherwise ....*' (citation omitted and emphasis added)); *Logan v. State,* 289 Md. 460, 470–71, 425 A.2d 632, 637 (1981) ('It would be a strange holding indeed were we to conclude that though the defendant can knowingly waive a constitutional right, he cannot knowingly waive a court rule (absent specific language rendering such a purported waiver ineffective) adopted to bolster and implement that constitutional right.... "We are unable to accept the thesis that no one can ever intelligently waive an important constitutional right voluntarily ...." ...' (citation omitted)); *State v. McKay,* 280 Md. 558, 375 A.2d 228, 234–35 (1977)."

■ Maryland Rule 4–246, which authorizes the waiver of a jury trial, states:

"**Rule 4–246. Waiver of jury trial-Circuit court.**

(a) **Generally.** In the circuit court a defendant having a right to trial by jury shall be tried by a jury unless the right is waived pursuant to section(b) of this Rule. If the waiver is accepted by the court, the State may not elect a trial by jury.

(b) **Procedure for acceptance of waiver.** A defendant may waive the right to a trial by jury at any time before the commencement of trial. *The court may not accept the waiver until it determines,* after an examination of the

defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, *that the waiver is made knowingly and voluntarily.*

(c) **Withdrawal of a waiver.** After accepting a waiver of jury trial, the court may permit the defendant to withdraw the waiver only on motion made before trial and for good cause shown. In determining whether to allow a withdrawal of the waiver, the court may consider the extent, if any, to which trial would be delayed by the withdrawal." [10] [Emphasis added.]

The election to waive a jury trial may be made at any time before commencement of the trial. *See* Md. Rule 4–246(b). If the accused chooses to waive his/her right to a jury trial, a waiver inquiry of the defendant must be conducted on the record in open court. *Id.* Only the defendant can waive his/her right to a jury trial [11] and, for the waiver to be valid, the court must be satisfied that the defendant's election was made knowingly and voluntarily. In *Martinez,* 309 Md. at 133 n. 9, 522 A.2d at 954 n. 9, we stated:

"The questioner can be either the court, the State's Attorney, the attorney for the defendant, or any combination of these individuals. However, the trial court bears the ultimate responsibility for ensuring that the accused has tendered a valid waiver. The trial court's conclusion must be on the record."

■ Ultimately, as we indicated *supra,* a trial judge must be satisfied that there has been an intentional relinquishment or abandonment of a known right or privilege. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969);

---

**10.** Md. Rule 4–246 is patterned after former Rule 735, which was effective from January 1, 1982 to July 1, 1984.

**11.** Jury trial rights are personal to a defendant, it is not a right possessed by his counsel. The mandatory rule requires that each defendant be personally examined in open court as to his or her desire to waive the right to a jury trial. *See State v. Kenney,* 327 Md. 354, 361, 609 A.2d 337, 341 (1992) (quoting *Howell v. State,* 87 Md.App. 57, 589 A.2d 90, *cert. denied,* 324 Md. 324, 597 A.2d 421 (1991)).

*McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466 (1938); *Johnson v. State,* 355 Md. 420, 735 A.2d 1003 (1999); *State v. Hall,* 321 Md. 178, 582 A.2d 507 (1990); *Stewart v. State,* 319 Md. 81, 570 A.2d 1229 (1990); *State v. Priet,* 289 Md. 267, 424 A.2d 349 (1981); *Davis v. State,* 278 Md. 103, 361 A.2d 113 (1976); *Epps v. State,* 52 Md.App. 308, 450 A.2d 913 (1982). Therefore, pursuant to case law and Maryland Rule 4–246, if the trial court judge determines that the waiver is an "intentional relinquishment or abandonment of a known right or privilege," and that waiver was knowingly and voluntarily, then the waiver meets the test set forth in Maryland Rule 4–246 and the trial judge may properly accept the waiver.

In *Martinez,* 309 Md. at 134, 522 A.2d at 955, we stated that:

> "In determining whether the defendant has knowingly and voluntarily waived his right to a jury trial, the questioner need not recite any fixed incantation. Whether there is an intelligent, competent waiver must depend on the unique facts and circumstances of each case. However, the court must be concerned that the waiver is not a product of duress or coercion. Furthermore, a defendant must have some knowledge of the jury trial right before he is allowed to waive it." [12] [Citations omitted.]

■ Whether there has been an intelligent waiver of the jury trial right depends upon the facts and circumstances of

---

**12.** In this case, there is no dispute that the proper procedures were taken to conform with the requirements set forth in Md. Rule 4–246(b). After the very beginning of the proceeding where appellant's counsel immediately stated that his client had already agreed to waive a jury trial in return for the dropping of charges and sentencing consideration of two judges, it was appellant's attorney, who thereafter conducted most of the examination of appellant in open court on the record regarding the right he was waiving. That questioning elicited answers from appellant that conformed with the requirements of Md. Rule 4–246(b). Defense counsel asked appellant numerous poignant questions to assure he understood his right to a jury trial, his ability to waive that right, the ramifications of waiving such a right and that he was doing so "freely and voluntarily." The record also reflects that during the litany

each case. *See State v. Bell,* 351 Md. 709, 720 A.2d 311 (1998); *Tibbs v. State,* 323 Md. 28, 590 A.2d 550 (1991); *Stewart v. State,* 319 Md. 81, 570 A.2d 1229 (1990); *Martinez, supra,* 309 Md. at 134, 522 A.2d at 955; *Dortch v. State,* 290 Md. 229, 428 A.2d 1220 (1981); *Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979).

 If the record in a given case does not disclose a knowledgeable and voluntary waiver of a jury trial, a new trial is required. *See Martinez,* 309 Md. at 136, 522 A.2d at 956; *Countess,* 286 Md. at 462–63, 408 A.2d at 1311; *Noble v. State,* 293 Md. 549, 558, 446 A.2d 844, 848 (1982).

### Appellant's Waiver

In the case *sub judice,* both parties discussed at oral argument in this Court whether there were certain statements of the trial court judge made in a conversation in chambers held prior to the commencement of appellant's trial. Whatever statements, if any, made by the trial judge in chambers, were never placed in the record of the trial. The fact that the trial judge's comment after he had been notified that appellant was waiving his right to a jury trial and the reasons for such a waiver, that appellant "certainly will make a better decision, I think, as far as sentencing is concerned, if he is found guilty by the Court than if he is found guilty by a jury," does not establish that there had been a prior conversation outside of the courtroom wherein appellant's counsel, the prosecutor *and the trial judge* might have "bargained," as appellant suggests, for the minimum possible sentence if appellant agreed to waive a jury trial for a court trial. Given the state of this record, to accept that the judge's participation, if any, was as appellant's counsel suggests, would be pure speculation. We emphasize that we can only consider the information on the record.

Therefore, this appeal turns on whether the record discloses that appellant made a knowing and voluntary waiver of his

---

defense counsel went off of the record and conferred privately with appellant.

right to a jury trial. The facts and circumstances of this particular case, as set out in the record before us, are sufficient to warrant a conclusion that the waiver was knowing and voluntary.

In the case at bar, the record reflects that the factors regarding appellant's agreeing to a bargain in his case were presented to him prior to his trial and the agreement, a part of which involved the State's recommendation of a sentence cap to the trial judge in exchange for appellant waiving his right to a jury trial, was "hammered out" by defense counsel and the prosecutor prior to trial.[13] There is no indication that what the trial judge later said on the record in the case *sub*

---

**13.** We note that in this case, appellant's counsel and appellee were attempting to negotiate a plea bargain agreement. However, as appellant's counsel put on the record, appellant did not accept his counsel's advice to accept the agreement as to a guilty plea offered by appellee and, instead, chose to proceed and try the case. Nonetheless, even after rejecting the option to plead guilty, appellant got the full bargain of these negotiations, particularly the benefit of the negotiated sentence. The prosecutor characterized the negotiations and the very brief trial as "a slow guilty plea."

Appellant contends on appeal that the judge's statements "chilled" his right to a jury trial and, therefore, rendered his waiver of that right involuntary. However, as we indicate *supra* and *infra*, the record shows that appellant's choice to proceed with a court trial predated the trial judge's statement and, as far as the record reflects, was motivated by the deal struck solely between himself, his counsel, Judge Boone and the State. We need not speculate further on appellant's motivations because a defendant faces a multitude of possible outcomes in choosing the type of trial proceedings and here, there was no violation of appellant's constitutional right because his waiver was knowing and voluntary.

In *Corbitt v. New Jersey*, 439 U.S. 212, 218, 99 S.Ct. 492, 497, 58 L.Ed.2d 466, 474 (1978), the Supreme Court stated that "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid." In that case, New Jersey statutes provided for a sentence of life imprisonment for a defendant found guilty of first degree murder by a jury, and permitted the same or lesser sentence if a defendant entered a plea of *non volt* or *nolo contendere*. The Supreme Court rejected the defendant's argument that the sentencing scheme penalized the exercise of his fundamental right to trial by jury, finding that a defendant faces a multitude of possible outcomes in choosing the type of trial proceedings, and that there were no constitutional violations under the circumstances. *See*

*judice* influenced appellant's prior decision to waive his right to a jury trial.

Prior to waiving his right to a jury trial, appellant and his attorney negotiated a deal with the prosecutor in which the prosecutor was going to drop all but one (or two) of the five charges pending against appellant,[14] recommend to the trial judge that appellant receive no more than the mandatory minimum 10–year sentence and seek that a different judge, Judge Boone, agree to impose a concurrent term of three years for a pending violation of probation case. On the record, appellant's attorney explained the terms of the agreement to him:

> *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604, 611 (1978) (where the Supreme Court recognized that even though the prospect of more severe punishment may have a discouraging effect on a defendant's assertion of his trial rights, difficult choices are a permissible attribute of the criminal justice system).
>
> As we indicated *supra*, as part of agreeing to a guilty plea, a criminal defendant may bargain away significant constitutional rights including the right to a trial by jury. And in negotiations in criminal cases, permitting the waiver of the right to a trial by jury to be a part of negotiated sentences may possibly even favor criminal defendants.
>
> Professors LaFave, Israel and King have commented on this issue:
>
> "Jury waiver, although largely a matter of regional custom, tends to vary depending upon the offense category. The pattern is similar to that for guilty pleas, suggesting that the motivations are similar. 'Paramount is the expectation of a lesser sentence if the conviction comes in a bench trial rather than from a jury, just as the plea of guilty carries a lesser sentence than the verdict of guilty. The defendant who does not want to wholly deprive himself of the possibility of an acquittal, but wants to assure a modicum of lenience in case of conviction, might be moved to waive the jury. There is some modest evidence that jury waiver may accomplish this.' (Quoting H. Calvin & H. Zeisel, *The American Jury*, 24–26 (1966))."
> [Footnote omitted.]
>
> Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* vol. 5 § 22.1(h) 264 (2d ed., West 1999).

**14.** Appellant's counsel clarified at oral argument that prior to appellant's waiver of a jury trial, appellant was actually getting two counts *nolle prosequie* due to the fact that a co-defendant was not present, not due to any bargain he and appellee had effectuated for appellant. Either way, it turned out that appellee agreed as a part of the bargain to try appellant only on the charges of possession of cocaine in sufficient quantity to indicate an intent to distribute.

"And you understand that you are giving up the right to a jury trial. And in exchange for giving up your jury trial right and proceeding with a bench trial, meaning a trial in front of Judge Wright, you are getting essentially a cap of 10 years, period, not executed/unexecuted. It doesn't matter because it's a mandatory 10. If you are convicted you are getting 10 years. Judge Wright has agreed not to go over that and Judge Boone has agreed, because you're not wasting a jury, that you will get your three years running at the same time as any sentence you would get in front of Judge Wright. You understand that?"

Appellant than answered "Yes." From the record, it is clear that the parties had been negotiating an agreement, part of which involved the State's recommendation for a ten-year cap on the sentence that was agreed to between the parties before it was presented to the trial judge and accepted. It cannot be gleaned that the trial judge's cursory ambiguous statement made after he was informed of the agreement and appellant's decision to proceed, for the reasons stated, and waive a jury trial, influenced the bargain itself. To the extent that the record appears to suggest some particular sentencing practice on the part of the trial judge, it is apparently primarily conjecture based upon defense counsel's general belief as to the sentencing practices in this particular jurisdiction. On this record, there is little evidence that raises the issue beyond speculation. Moreover, by the time the trial judge learned of the agreement and later commented on the record that he thought appellant was making the best choice, the choice effectively had already been made.

The *record* does not reflect that there was, prior to appellant's notification to the court that "My client's agreement to waive jury trial and proceed in this matter was premised upon the cap of 10 and of course 10 is the minimum in the case he has here," any transcript reference reflecting that the trial judge directly or indirectly through defense counsel or the prosecutor told appellant that he would impose a more severe sentence if appellant "wasted" court time with a jury trial. While the sentencing issue may have been part of

the conversation between the State, appellant's attorney and appellant, the record does not adequately confirm that the trial judge was a party to that prior discussion. If there was a practice in that jurisdiction of penalizing defendants for choosing to be tried by jury, *i.e.*, by imposing more severe sentencing, such a practice would clearly be unconstitutional. But, the only thing the record in this case reflects is that appellant's attorney might have formed that opinion. At oral argument, appellee's counsel noted that in order to find such an improper practice to exist in this court "you would have to look outside the record to find that." If such an improper coercion had arisen in chambers because of anything the trial judge stated, then counsel had the right or a duty to insist that the alleged inappropriate conversation in chambers be placed on the record. Likewise, if appellant's counsel felt that any of the trial judge's comments had compromised, induced or influenced appellant's right to trial by jury, counsel should have voiced objection immediately or advised appellant to withdraw his jury trial waiver. Appellant's counsel did not do so. We presume therefore, as we must, given the state of the record before us, that no improper coercion occurred.

Additionally, the record of the proceedings below does not support appellant's main contention in this appeal, that the trial judge's post-waiver notification comment "chilled" his right to a trial by jury and rendered his waiver ineffective. Appellant's choice to proceed with a court trial was apparently motivated by favorable sentencing recommendations which the trial judge accepted, favorable sentencing recommendations which the judge hearing his violation of probation case accepted and the prosecutor's agreement to proceed with only two of the five charges pending against appellant, not by the "... I think ..." post-waiver notification statement of the trial judge.

Appellant asserts that at the outset of the proceedings he indicated to the court that he would waive a trial by jury in return for a maximum sentence of ten years without parole, actually the minimum sentence appellant, as a subsequent offender, could receive in this case. Appellant contends that

the trial judge's comments such as "I'm willing to be a part of a case that's waived jury and proceed to court trial" and "if he wishes to waive a trial by jury and proceed to elect trial by court, we go," "made it abundantly clear he did not wish to preside over a jury trial." Appellant's counsel then commented "I will admit [appellant] has really wanted a trial by jury but he's agreed in exchange for receiving certain considerations from the Court . . . he would proceed in this manner." (alteration added). To which the trial court judge replied "Well he certainly will make a better decision, I think, as far as sentencing is concerned, if he is found guilty by the Court than if he is found guilty by a jury." (emphasis added). Appellant argues in his brief that:

> "The implications of this pronouncement were not lost on Appellant, whose counsel replied, '[a]nd I have absolutely advised him of that. He knows that your Honor. And I think that is the reason we intend to proceed in this manner.' Quite clearly, the comments of the trial judge chilled Appellant's right to a jury trial and rendered his subsequent waiver of that constitutional right involuntary."

Based upon the same statement of the trial judge, appellant also phrases his argument in a different way and reiterates that "[his] waiver . . . was improper where the trial judge prior to appellant's waiver, unequivocally stated he would impose a harsher sentence if appellant were found guilty after a jury trial, as opposed to a court trial." (alteration added) (emphasis added).

We hold that appellant is incorrect in his assertions because, most importantly, what the trial judge said was said *after* appellant, through counsel, had already informed the trial court that he was waiving his right to a jury trial. The trial judge's after-the-fact statement on the record could not have influenced appellant's prior decision to waive his right to a jury trial.[15]

---

15. Likewise, any argument by appellant that the trial judge's later statement at sentencing to appellant that "if you [appellant] had gone to trial by jury and convicted, with your background, you would have

■ We hold that on this record, appellant was well aware of the constitutional right he was waiving and that his decision to waive the right was not improperly influenced by the trial court. Appellant's waiver was knowing and voluntary and the trial court judge was correct to "accept [appellant's] election of trial by court as being an intelligent and knowing decision." (alteration added). We reject appellant's argument that the trial judge's statement affected the decision that appellant had already made.

Additionally, as appellee states in its brief:

"Where the primary aspects of the sentence bargain involved the prosecution dropping four of five charges and agreeing to a sentence cap of 10 years without parole, and where [appellant] also negotiated for a concurrent sentence in a pending violation of probation case, the trial court's suggestion that he would benefit from choosing a court trial cannot be isolated as the only reason why [appellant] waived his right to trial by jury." [Alterations added.]

This appeal, at its core, is a waiver issue. We have reviewed appellant's waiver and deemed that it was knowing and voluntary and that, based upon the record, the trial judge's statements did not render this waiver involuntary. However, we shall address the issue further for guidance. To support his argument, appellant focused upon case law questioning whether the waiver of a jury trial may properly be the subject of a barter. Specifically, appellant relies upon the case of *Epps v. State,* 52 Md.App. 308, 313, 450 A.2d 913, 915–16 (1982), where the Court of Special Appeals stated:

---

probably gotten at least 20 years," could not have had a chilling effect on appellant's previous decision to waive, knowingly and voluntarily, his constitutional right to a jury trial. (alteration added). That decision had long been made by appellant and already accepted by the trial court judge as knowing and voluntary. Had the agreement not existed and a jury found defendant guilty of all of the charges, the sentencing might well have involved a greater sentence than appellant received. A part of the plea agreement involved the State declining to prosecute the remainder of the charges and the agreement of another judge to impose a concurrent sentence on an unrelated charge.

"More importantly, bargaining over the waiver of a jury trial is not now addressed by any procedural rule in this State. The fundamental right to a jury trial may be waived under Md. Rule 735 [now Md. Rule 4–246]; if it is to be subject to barter between a defendant and the State, the trial judge should be apprised fully of the nature and extent of the bargain.

(Whether it may properly be the subject of barter, a question we do not resolve, should be carefully considered by the bench and bar.)" [Alteration added.]

The *Epps* case relied upon by appellant is distinguishable. In *Epps*, the defendant waived his right to trial by jury. On appeal, he claimed that his waiver was based on the prosecutor's promise that he would get only "one life sentence" and also claimed that the trial judge agreed to be bound by the recommendation. After sentencing, Epps sought a new trial because he was sentenced to three concurrent life sentences for three counts of first degree murder and two 30 years concurrent terms for arson. If in fact the trial court had agreed to accept a plea agreement limiting the total sentence to one life term, the agreement would have been violated. That was the relevant issue in *Epps*-whether the trial judge had agreed to be bound by the agreement.

In *Epps*, the Court of Special Appeals scrutinized the record and held that Epps was corrected on the record by the trial judge of what the bargain consisted of, *i.e.*, the trial judge merely restated the State's recommendation, but that the trial judge had not "agreed" to impose only one life sentence. In that case the intermediate appellate court also recognized the difference between bargaining as to pleas, which is clearly permissible, and bargaining for a defendant's waiver of his or her constitutional right to a jury trial in exchange for a reduction of certain charges or a guilty plea. However, in *Epps*, the Court of Special Appeals noted that Epps chose to be tried by the court to avoid the potential of an emotional reaction to the nature of the arson and murder crimes.

We note that, generally, in this jurisdiction there are two types of "plea" bargains—charge bargains and sentencing bargains. A charge bargain is where the prosecution agrees to drop certain charges in return for the defendant either pleading guilty or agreeing to proceed on an agreed statement of facts (whether before a jury or a judge—although normally before a judge). In a sentence bargain the prosecution either agrees to submit a binding agreement as to the sentence to a judge who either accepts it, or if he or she rejects it, affords an opportunity to a defendant to be tried before another judge, or the prosecution agrees to recommend to the judge a particular sentence, or sentencing range, but the judge may reject the sentence and remain in the case.[16] In most cases (although not all cases) the bargaining as to pleas involves the waiver of a jury trial. Accordingly, the waiving of jury trials in the context of plea bargaining is not at all unusual. The slight difference in the present case is that what ultimately resulted was not bargaining as to a plea, but a simple bargain that appellant would, in return for prosecutorial and sentencing considerations received from the State and accepted by the court, waive his right to proceed in a jury trial even though he professed, through counsel, that, absent the agreement, he would have preferred to be tried by a jury. The questions he raised in this respect, go to the heart of the plea bargaining process.

As we perceive the issue there is really no difference at all. A defendant, generally, may waive constitutional rights so long as he or she freely, knowingly and voluntarily does so. That is apparent from our cases that we refer to *supra* and *infra*. Other jurisdictions have also found that proper waivers of constitutional rights are permissible. We include cases involving bargains as to pleas only, in that the conditions on acceptance of such bargains (absent a rule) are essentially the same and moreover, usually encourage waivers of the right to trial by jury.

---

**16.** There is actually a third type of agreement: the combining of charge and sentencing bargaining.

*United States v. Frontero,* 452 F.2d 406, 411–12 (5th Cir. 1971) [17], involved a guilty plea waiver, but the Fifth Circuit's comments are also relevant in a waiver of jury trial context. That court noted:

"The defendant, however, must have reasonable grounds for assuming that the bargain would be consummated. He cannot, in the ordinary case, rely on the promise of the prosecutor who has no authority to make sentencing promises, or on the inaccurate representations of an overzealous attorney. *There must be some basis in the record for an appellate court to find that a 'bargain' has been made which acted as an inducement and destroyed voluntariness.* Often such 'deals' are made privately and rarely if ever is a record kept. Therefore, all that an appellate court has is the word of the defendant or defense counsel against the word of the trial judge. At the very least, in such a situation, the defense attorney must assert the existence of the bargain and the events leading to its alleged formation. Without at least some indication, even if that indication is only in the form of the insistence of defense counsel at a hearing on a motion to withdraw the guilty plea, that a 'bargain' was made and that there was a reasonable basis for reliance on the bargain and that the 'bargain' destroyed voluntariness, this Court would have to be clairvoyant to find involuntariness from a silent record.

"All that this record contains to support Lagana's claims of a 'deal' are conclusory statements by the defendant. The trial judge conducted a full detailed inquiry into the voluntariness of Lagana's plea. This Court has repeatedly held that, when a defendant tells the trial judge that no 'deal' has been made, he cannot later claim inducement based on a 'deal.' " [Citations omitted.] [Footnote omitted.] [Emphasis added.]

In *Dube v. State,* 257 Ind. 398, 402, 275 N.E.2d 7, 9 (1971), the Indiana Supreme Court stated:

---

17. *Frontero, supra* was in the context of Federal post-conviction relief.

"We recognize that so-called plea bargaining is a widespread practice in our criminal courts and that it often proves beneficial for both parties.... For the defendant, it clearly increases the likelihood of a lighter sentence than he might otherwise receive.... However, with these benefits there are accompanying dangers inherent in the practice. This procedure must not be used as a coercive force to obtain pleas of guilty but must be the result of an agreement which both sides find mutually beneficial.... Several very important constitutional rights are waved by a defendant when he pleads guilty, including the right against self-incrimination *and the right to a trial by a jury* of his peers. When a waiver of these important rights occurs we must scrutinize the situation closely to make certain the that the waiver was freely, knowingly, and voluntarily made with full knowledge of the consequences.

"Clearly, the mere expectation of receipt of a lesser sentence would not be sufficient to make the plea involuntary." [Emphasis added.]

An Indiana intermediate appellate court considered alleged statutorily required inducements in a jury trial waiver case where the statute required a defendant to waive his right to a jury trial in order to avail himself of an alternate drug treatment program. In *Perry v. State*, 401 N.E.2d 705, 707–08 (Ind.App.1980), that court stated:

"Perry, in his brief, concedes that he waived his right to jury trial as required by statute. Perry's sole contention on this issue is that his waiver was not voluntary since it was induced by the speculation that he would be accepted and successfully complete the drug abuse treatment program, and, thus, earn dismissal of the criminal charge....

. . .

" ... Perry obtained the benefit of his election to seek treatment as a drug abuser. To do so, under the statute, he had to waive jury trial, and did do so, presumably under advice by the court as required by statute ... thereby

conferring a substantial benefit upon Perry in exchange for his waiver of jury trial ... Perry's benefit was ... [denied] him ... by his own action in leaving the treatment program without authorization." [Citation omitted.] [Alteration added.]

In *State v. Killebrew*, 416 Mich. 189, 194, 330 N.W.2d 834, 836 (1982), the Supreme Court of Michigan, when considering the constitutionality of sentence agreements and the judicial role in sentence bargaining, proffered its opinion of the process, stating:

"We hold that sentencing concerns are appropriate subjects for plea bargaining. However, we hold that the judge's role in plea negotiations, sentence bargaining included, is limited to consideration of the bargain between the defendant and the prosecutor. The judge may not become involved in the negotiation of the bargain."

That court went on to explain:

"[W]e find two competing considerations which must be accommodated: on the one hand, judicial involvement in the procedure must be kept to a minimum to avoid a coercive effect on the defendant and loss of public confidence in the judicial system; on the other hand, the statute requires the judge to ultimately impose the sentence.

"First the judicial role in the negotiation process must be limited for several reasons—to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice.

"The problem of coercion arises from the disparate bargaining positions of the judge and the defendant: the judge wields the decisive sentencing power to which the defendant must submit. Should the trial judge exert or even seem to exert the authority of this position to induce the defendant to plead guilty, the voluntariness of the defendant's subsequent waiver of his right to a jury trial becomes questionable."

*Id.* at 202, 330 N.W.2d at 839. Additionally, the Michigan Supreme Court stated:

"We feel that these methods of procedure for sentence agreements and sentence recommendations have several important advantages. First, by limiting judicial participation, the judge is better able to maintain his role as a neutral arbiter. Having not participated in nor, indeed, in some courts, even directed the negotiations, the trial judge has no vested interest in seeing the plea agreement effectuated. Second, because the judge has maintained his neutrality, the trial judge is in a better position to determine the voluntariness of the plea. . . . Third, the judge will retain control over sentencing. If the judge feels that the agreement reached by the defendant and government attorney will serve the interests of justice, he may accept the agreement or recommendation. If, however, the judge, in an exercise of his discretion, finds that the bargain is not appropriate, he is free to reject the plea. Thus, the judge's sentencing discretion is unhampered. Fourth, this system eliminates the impropriety of judicial negotiations with either the defendant or the government's attorney. Perhaps just results were reached during such negotiations, but the appearance of covert activity which *resulted from off-the-record discussions* destroys a defendant's faith in the judge's neutrality, as well as the public's respect for the law. Fifth, the elimination of covert negotiations and the greater certainty infused in the guilty-plea proceedings by bringing sentencing bargaining out into the open should reduce appeals for post-conviction relief on the basis of the bargaining. Also, review of the appeals that are taken will be facilitated by the record made of the proceedings. Finally, the coercive atmosphere of the bargaining process will be minimized."

*Id.* at 210–11, 330 N.W.2d at 843 (emphasis added). That court ultimately held that:

"[A] trial judge shall not initiate or participate in discussions aimed at reaching a plea agreement. He may not engage in the negotiation of the bargain itself. The trial judge's role

in the plea-bargaining procedure shall remain that of a detached and neutral judicial official."

*Id.* at 205, 330 N.W.2d at 841.

In one recent post-conviction case from the intermediate appellate court in Ohio, allegations similar to those made by appellant in the present case were made. In *State v. Ushery,* 2002 Ohio 3673, 2002 WL 1585910 (2002)[18], the defendant, among other allegations as to incompetency of counsel, in proffering that he had been improperly coerced into selecting a trial by the court when he really wanted to be tried by a jury, contended that his position was supported by "(7) Ushery's affidavit quoting counsel's 'representations' to him, following counsel's 'discussions' with the court and the assistant prosecutor, 'that "if I waived jury trial the judge would be more lenient at any possible sentencing on the case".' * * *" *Id.* at P9. The defendant also claimed that the affidavit (along with other allegations of incompetence) was sufficient to establish that his waiver of a jury trial was "not knowing, voluntary or intelligent." The Ohio court noted that Ushery's claim "depended for its success upon Ushery's assertions (1) that his trial counsel had 'coerced' or deceptively induced his waiver of a jury trial with the promise that the trial court would be lenient in sentencing him . . . ." *Id.* at P10.

Ushery had executed a written waiver of his right to a jury trial. Additionally, the trial judge had conducted an on the record colloquy with him in which he had acknowledged that the waiver of his right to a jury trial "had not been secured by

---

18. This citation is apparently a vendor neutral citation method that Ohio, along with approximately eight other states, now uses instead of the printed reporter citation method. It appears that Ohio no longer distinguishes between "published" and "unpublished" case opinions, but other states that use the vendor neutral citation method still only report and publish cases that the those courts decide should be reported in a printed reporter. The vendor neutral citation method uses ·a paragraph pinpoint citation method rather than a pinpoint page reference to identify text within the opinion. The full cite available on Lexis for this case is *State v. Ushery,* Appeal No. C–010613, Court of Appeals of Ohio, First Appellate District, Hamilton County, 2002 Ohio 3673, 2002 WL 1585910, 2002 Ohio App. LEXIS 3737, July 19, 2002.

'special promises or representations' by trial counsel, the prosecution, or the court." *Id.* at P11. Therefore, in that case there existed on the record waivers asserting that there had been no coercion, balanced against allegations proffered by affidavit after the trial asserting that there had been. The court held:

"Moreover, of the outside evidence submitted with the petition, only the declarations by Ushery contained in his own affidavit and in his letters to trial counsel and to the bar association's grievance committee supported his assertion that his waiver had been induced by a promise of leniency. Such self-serving declarations were insufficient as a matter of law to rebut evidence of record to the contrary."

*Id.* at P12.

In *Commonwealth v. Carey,* 235 Pa.Super. 366, 340 A.2d 509 (1975), a post-conviction proceeding, the Pennsylvania appellate court invalidated a defendant's waiver of his right to a jury trial because it was unclear as to whether the trial judge who was involved in negotiations had agreed to a particular sentence and then imposed a heavier sentence. In that case, the defendant contended that he did not voluntarily waive his right to a jury trial when, following a pre-trial conference between the trial judge, the assistant district attorney, the defendant's counsel and counsel for a co-defendant, his attorney advised him that "[I]f he waived a jury trial he would, if convicted, receive a sentence of no more than 6 to 23 months." *Id.* at 369, 340 A.2d at 510. An on the record colloquy ensued between the defendant and his counsel and the defendant waived his right to a jury trial. After being found guilty of burglary with intent to commit a felony, the trial judge refused the recommendation and sentenced the defendant to 5 to 10 years. There, the defendant claimed he waived his right to a jury trial not because of any promise made to him by the district attorney or the court, but rather "because of a promise made to him by his counsel." *Id.* at 371, 340 A.2d at 511. The defendant's attorney "repeatedly testified at the post-conviction hearing that his advice to [the defendant] was based on his impression from the pre-trial conference that the sentence

would be no more than 6 to 23 months." *Id.* at 372, 340 A.2d at 511 (alteration added). The Pennsylvania intermediate appellate court then stated that "the fact that counsel based his advice on an erroneous impression of what was said at the pre-trial conference is not sufficient, however, to warrant setting aside [the defendant's] waiver of his right to a jury trial. The question remains whether counsel's error affected [the defendant's] willingness to waive that right." *Id.* (alterations added). That court ultimately held that the defendant's waiver of his right to a jury trial was not valid because the record corroborated the defendant's claim that he waived his right only because his counsel assured him his sentence would be limited to no more than 23 months.

An intermediate appellate court in Texas noted that "If no prior commitment was made by the judge ... they [the defendant's attorneys] could not have been misled by a promise that did not occur." *Kincaid v. State,* 500 S.W.2d 487, 491 (Tex.Crim.App.1973) (alteration added). Kincaid, the appellant in that case, waived his right to a jury trial and changed his plea to guilty. On appeal, Kincaid argued that his pleas of guilty were involuntary because they were induced by the promise of the trial court to grant probation and that that promise was not carried out. On the hearing of Kincaid's motion for a new trial, evidence was introduced that the trial judge had committed himself to Kincaid's attorneys to grant probation before the pleas of guilty were made. However, in that hearing neither the trial judge nor Kincaid testified and the trial court refused to permit two witnesses to testify. That court stated, that "It would have been unjudicial and contrary to public policy for the trial judge to commit himself as to his decision prior to the hearing," but held that "no prior commitment was made by the judge ... [and Kincaid's attorney's] could not have been misled by a promise that did not occur." *Id.* at 490–91 (alteration added).

In the case *sub judice,* appellant, when he was receiving advice in reference to his expressed intention to waive his right to a jury trial, was, as we indicated above, specifically asked by his counsel, on the record "Other than what I have

put on the record, has anyone promised you anything or threatened you in any manner to give up your right to a trial by jury...." Appellant did not at that point, or later in the trial, claim that he had been improperly coerced or threatened with a greater sentence if he chose to be tried by a jury. He was, during that same pre-trial colloquy, asked if he was giving up his right to a jury trial "freely and voluntarily?" He answered "Yes." At the conclusion of this exchange the court noted, "All right, the Court will accept your election of trial by court as being an intelligent and knowing decision."

As is apparent, the allegations now made by appellant that his choice of trial by the court was not made freely, knowingly and voluntarily is belied by the record. As in *Ushery*, we fail, under the circumstances of this case, to see how an appellate court can, generally, accept outside-the-record allegations to rebut clear on-the-record statements of a defendant. If there are off-the-record matters contradicting plain on-the-record assertions it behooves a defendant and his counsel to place them on the trial record of the underlying and primary action by proffer or otherwise, rather than to wait until the trial is concluded to assert them, for the first time, on appeal.

As we indicated *supra*, the facts of the present case do not sufficiently support that the trial judge himself, or indirectly through defense counsel or the prosecutor, stated that he would impose a harsher sentence if appellant went through with a jury trial or expressly promised a lesser sentence if appellant waived a jury trial. The record does not reflect that the trial judge in this case was involved in any "barter" with appellant regarding his decision to waive his right to a trial by jury. Rather, in the case *sub judice*, what happened was that appellant, through counsel, negotiated a deal with appellee and reaped the sentencing benefit of that deal, accepted by Judge Wright and Judge Boone, and in the process made a knowing and voluntary waiver of his right to a jury trial.

■ We recognize that a criminal defendant may not be punished for exercising a fundamental constitutional right. In *Johnson v. State*, 274 Md. 536, 336 A.2d 113 (1975), we held

that a trial judge imposing a sentence following a criminal conviction may not even suggest as a sentencing consideration a defendant's failure to plead guilty and insistence on a jury trial. In *Johnson*, the trial judge at sentencing stated "if you had come in here with a plea of guilty . . . you would probably have gotten a modest sentence." *Id.* at 543, 336 A.2d at 117. We stated:

"[W]e find that a consideration of Johnson's failure to plead guilty was impermissible because a price may not be exacted nor a penalty imposed for exercising the fundamental and constitutional right of requiring the State to prove, at trial, the guilt of the petitioner as charged. This is as unallowable a circumstance as would be the imposition of a more severe penalty because a defendant asserted his right to counsel or insisted on a jury rather than a court trial."

*Id.* In *Johnson*, the outcome was a reversal. That remains the law in Maryland and the trial courts are charged with knowing that such actions are improper, and if the record in any trial supports a holding that a sentencing judge is basing sentencings on whether a defendant has waived a constitutional right, including waiving his or her right to a jury trial, that sentence, and when appropriate the verdict, will be vacated or reversed upon proper appeal.

Several other jurisdictions have also addressed this issue. In *People v. Collins*, 26 Cal.4th 297, 302, 109 Cal.Rptr.2d 836, 27 P.3d 726, 730 (2001), during a waiver of a right to jury trial, the defendant advised the court that, "I was told that it would [waiving trial by jury] that it was some reassurance or some type of benefit." (alteration added) (emphasis added). In response the California Supreme Court noted what the trial judge had said:

"Okay, I think that-I think what [defense counsel] may have been referring to is that I indicated to counsel when somebody mentioned that this issue is going to be discussed with you that there might well be a benefit in it. Just by having waived jury, that has some effect on the court. Do you understand that? By not taking up two weeks' time to try

the case, but rather giving-just having it in front of a judge alone.... Do you understand that?" [Emphasis omitted.]

*Id.* Collins indicated that he understood and the court added, "I didn't specify and I'm not specifying that there's any particular benefit, but that by waiving jury, you are getting some benefit, but I can't tell you what that is because I don't know yet. Understood?" *Id.* (emphasis omitted). The trial judge found that the defendant made a knowing and intelligent waiver, thus the case proceeded as a court trial and Collins was found guilty. On appeal, Collins argued that his jury trial waiver was induced by the court's offer of a benefit and was therefore not voluntarily under either the federal or state constitution.

In reversing the lower court's decision regarding Collins' waiver, the California Supreme Court opined "the high court has long recognized that the state may not punish a defendant for the exercise of a constitutional right, or promise leniency to a defendant for refraining from the exercise of that right." *Id.* at 305–06, 109 Cal.Rptr.2d 836, 27 P.3d at 732. That court held that:

"The trial court, by following that procedure [querying the defendant on the record concerning his waiver of trial by jury] while announcing its intention to bestow some form of benefit in exchange for defendant's waiver of that fundamental constitutional right, acted in a manner that was at odds with its judicial obligation to remain neutral and detached in evaluating the voluntariness of the waiver." *Id.* at 309, 109 Cal.Rptr.2d 836, 27 P.3d at 734.

This was particularly true because, "The court made these representations and offers to defendant prior to determining that his waiver of the right to trial by jury was knowing, intelligent, and voluntary." *Id.* Furthermore, that court stated that "the objective of the trial court's comments was to obtain defendant's waiver of a fundamental constitutional right that, by itself (when defendant elects to go to trial), is not subject to negotiation by the court. In effect, the trial court

offered to reward defendant for refraining from the exercise of a constitutional right." *Id.*

In *In re Cox,* 680 N.E.2d 528 (Ind.1997), the Indiana Supreme Court held that a judge violated the Code of Judicial Conduct by inappropriately imposing an added penalty against a criminal defendant for exercising her constitutional right to a jury trial. Prior to the defendant's election of a court or jury trial, the judge "warned [the defendant] that he would apply different sentencing guidelines if she was convicted after a jury trial than he would apply if she accepted a plea or a bench trial" *Id.* at 529 (alteration added). The defendant chose to continue with a jury trial and was found guilty. Although the state did not present any aggravating factors at sentencing that might have merited imposition of a jail sentence, the judge imposed a sentence of one year of incarceration, with six months suspended "consistent with a sentencing policy he had generally employed since 1987 by which defendants who demanded jury trials and were convicted received lengthier sentences because of their jury demands than did defendants who submitted to bench trial or who pled guilty." *Id.* *See also, State v. Mata,* 71 Haw. 319, 789 P.2d 1122, 1126 (1990) (holding that a threat of a more severe sentence, if a jury trial is demanded and a guilty verdict results, would be coercive and would violate a criminal defendant's constitutional rights).

The opposite result, albeit only because of a different factual situation, was reached in *People v. Godbold,* 230 Mich.App. 508, 585 N.W.2d 13 (1998). In that case, the Michigan Court of Appeals affirmed the defendant's jury trial waiver where, before deciding on a court trial or jury trial, Godbold's counsel advised him "that there was a high probability of conviction before either a jury or a judge, that the judge had substantial sentencing discretion within the guidelines range and usually sentenced within the guidelines, and that choosing a bench trial would save defendant some time in prison." *Id.* at 513, 585 N.W.2d at 16. The defendant argued that his waiver was rendered involuntary by the representations of his attorney that opting for a jury trial would result in a lengthier sentence

if convicted. The appellate court held that defense counsel made an "informed prediction, not a promise," not the equivalent of a warning that the defendant will be penalized for opting for a jury trial. *Id.* at 516 n. 3, 585 N.W.2d. at 17 n. 3.

In the case *sub judice*, appellee noted the portion of *Godbold* where the Michigan Court of Appeals opined that, "We hold that where there is no express or implied threat of punishment for exercising the constitutional right to a jury trial, such a threat does not emerge solely from the expectation of leniency." *Id.* at 518, 585 N.W.2d at 18. That court held that the defense counsel's advice to Godbold was "based on reality."

Appellant contends that such cases demonstrate that bartering over a defendant's right to waive the constitutional right to a jury trial should be prohibited and that the actions of the trial judge in the case *sub judice* amount to improper bartering and, therefore, his waiver should be rendered ineffective. Appellant argues that:

> "whether coined as the trial judge impermissibly bartering to reward Appellant for refraining from exercising a constitutional right, or impermissibly threatening to punish Appellant in the event he exercised his right to trial by jury, it is really two sides of the same coin. This type of conduct in the plea-bargaining arena is one thing, but it is an entirely different, and inappropriate matter in the context of a defendant choosing between two equal modalities of trial, court or jury.... It should matter not, in fashioning a sentence, whether the defendant opted for a court or jury trial. Here, the comments of the trial judge impermissibly chilled Appellant's right to a jury trial, and therefore rendered his waiver of same involuntary."

We completely agree that judges cannot take into account the waiver of a jury trial when sentencing, or in that sense (*i.e.* promise leniency) "barter" with a defendant over a lesser sentence in exchange for the waiver of a constitutional right. These cases relied upon by appellant support that a criminal defendant cannot be punished by a court for exercising a

fundamental constitutional right or, conversely, promised in advance, leniency by a court for not exercising a fundamental constitutional right. That is the Maryland Law. However, there is insufficient evidence in this particular record indicating that such occurred in this case. Under the circumstances of this case, appellant's jury trial waiver at the point that it was made, was neither coerced nor induced by anything said by the trial judge that is reflected in the record. Appellant had already chosen a court trial before the trial court told him that he had made a good choice. Moreover, as far as this record reflects, any bartering over appellant's waiver of his right to a jury trial occurred in the context of negotiations solely between defense counsel and the prosecutor.

Had the record indicated that the trial judge said or indicated, *prior* to appellant choosing a court trial, that he was going to give a harsher sentence if appellant chose a jury trial and was convicted, or a lenient sentence if he would forgo a jury trial and was convicted at a bench trial, or that the trial judge told appellant that he (or other trial judges in Washington County) had a practice of imposing harsher sentences on those defendants who elected jury trials and were convicted, then the holding of this case might be different. That is a practice we do *not* condone. Therefore, in this sense, appellant is correct to assert that a trial judge, directly or indirectly, should not barter or attempt to barter with a defendant over his or her right to waive a jury trial in return for sentencing considerations. The trial judge should stay out of such negotiations until such time as he or she is presented with an agreement for approval. The trial judge should never condition his or her acceptance of a plea or waiver arrangement on a practice of rendering more lenient sentences for those who waive constitutional rights. But, this, so far as the record reflects, is not the situation in the case at bar. So far as the record shows, this case involves a bargain negotiated between defense counsel and the prosecutor where, as part of that bargain, the prosecutor agreed to drop charges and recommend a sentence cap for appellant from the trial judge if appellant agreed to waive his right to a jury trial. After

choosing a court trial, but still before the trial judge made his allegedly improper statement, appellant's counsel further notified the court, "And he will do that [waive a jury trial] provided that all the things that [the prosecutor] and I spoke about fall into place for [appellant]." (alterations added). Nothing later said on the record by the trial judge could have possibly influenced that prior decision.

### III. Conclusion

A trial judge should not suggest leniency to induce a defendant to elect a court trial or threaten or imply a harsher sentence if the choice is made to proceed with a jury trial over a court trial. Nor should he or she base any sentencing decision on a previous exercise or waiver of a constitutional right. There is an innuendo raised in this case by appellant that, in reality, this type of improper sentencing practice occurs to criminal defendants in Washington County somewhat frequently. There is insufficient support in the record of this case to elevate that characterization beyond mere conjecture. If there is any such practice anywhere in Maryland, it is improper and unconstitutional. If the record in the case *sub judice* had adequately reflected that the trial judge had committed such an impropriety the result would have been a reversal. It is permissible for a criminal defendant to waive a jury trial and elect instead to take a court trial in return for concessions when the defendant's decision is a result of bargaining between defense counsel and the prosecutor, independent of any representations of leniency or harshness by the trial judge. We hold that appellant's waiver of his right to a jury trial pursuant to the facts and circumstances of this case was knowing and voluntary.[19]

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

19. This case is before us on direct appeal. The holdings in this opinion are without prejudice to any post-conviction claims.