A11A0050. EALEY v. THE STATE.

(714 SE2d 424)

PHIPPS, Presiding Judge.

After a stipulated bench trial, Val Ealey was convicted of trafficking in cocaine, possession of marijuana, and exceeding the speed limit. Ealey appeals, asserting that his waiver of the right to a

jury trial was ineffective because it was not voluntary. Specifically, he argues that the court coerced him into waiving his jury trial right by promising him a lighter sentence and an appeal bond if he opted for the bench trial. Under the circumstances presented in this case, we hold that the waiver was not voluntary and the trial court's finding that the waiver was valid was clearly erroneous. Therefore, we reverse Ealey's convictions. Because our review of the evidence adduced at the stipulated bench trial shows that it was sufficient to support Ealey's convictions, he may be retried.[1]

"A defendant's right to trial by jury is one of those fundamental constitutional rights that the defendant must personally, knowingly, voluntarily, and intelligently choose to waive."[2] The state bears the burden of showing that the defendant made a knowing, voluntary and intelligent waiver of that right.[3] A defendant's consent to a trial without a jury need not be in any particular, ritualistic form; the trial court need only conduct an inquiry of the accused on the record so as to ensure that the waiver is knowing, voluntary and intelligent;[4] Ealey's contention is not that his consent to a trial without a jury was not knowing or intelligent, but that it was not voluntary in light of the trial court's participation in the decision-making process. We will affirm a trial court's determination that a defendant validly waived his right to a jury trial unless that determination is clearly erroneous.[5]

The transcript shows the following. After the court heard and denied Ealey's motion to suppress, Ealey's attorney informed the court that Ealey desired to waive his right to a jury trial and proceed instead with a bench trial. The court asked Ealey whether he understood that he had a constitutional right to a jury trial. Ealey replied that he understood. When asked whether he had been afforded sufficient time to talk to defense counsel about the difference between a jury trial and a bench trial, Ealey responded that he had. The court again asked Ealey if he desired to waive his right to a jury trial and opt instead for a bench trial. Ealey responded affirmatively.

The attorneys and the court then discussed possible evidentiary stipulations for the bench trial, after which the following occurred:

THE DEFENDANT: Your Honor, I did not understand

---

[1] See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992).

[2] *Watson v. State*, 274 Ga. 689, 691 (2) (558 SE2d 704) (2002) (footnote omitted).

[3] *Balbosa v. State*, 275 Ga. 574, 575 (1) (571 SE2d 368) (2002); *Jackson v. State*, 253 Ga. App. 559, 560 (560 SE2d 62) (2002).

[4] *Brown v. State*, 277 Ga. 573, 574 (2) (592 SE2d 666) (2004).

[5] *Edwards v. State*, 285 Ga. App. 227, 229 (2) (645 SE2d 699) (2007).

my attorney, I didn't understand what was going on here. I need a jury trial.

>THE COURT: You want a jury trial?
>THE DEFENDANT: Yes.
>THE COURT: Okay. That's fine.

The court then asked the state if there were any other matters to be taken up before the jurors were brought in. Citing Ealey's initial purported waiver, the prosecutor objected to his renewed request for a jury trial. The court remarked that Ealey was entitled to revoke his jury trial waiver at any time before the first witness was sworn. Thereafter, the following occurred:

>THE COURT: Okay. Mr. Ealey, I want to make sure you understand every option that you have available to you. You have the option . . . [to] waive your right to a jury trial and enter into a stipulated bench trial and if you were to do so, the Court . . . would then sentence you — I'll be honest with you, I will go ahead and grant you, I know you want to appeal this case,[6] so I would go ahead and grant you a supersedeas bond, which would let you out of jail pending appeal and then depending on what the outcome of the appeal was . . . go forward with your sentence or not. Do you understand what I just said?
>THE DEFENDANT: I still need to confer with my counsel.
>THE COURT: I just want to make sure, do you understand what I just said?
>THE DEFENDANT: I understand perfectly what you just said.
>THE COURT: Here's the other option, to go forward with a jury trial, if you want to go forward with a jury trial that's fine. I don't care. It doesn't matter to me. . . . I'm going to be sitting here no matter what, no matter who is sitting over there.
>THE DEFENDANT: Right.
>THE COURT: If you want to go forward with a jury trial that's fine. Just to let you know — what's the State's recommendation at the conclusion of a bench trial?

When the prosecutor replied that she did not have a recommenda-

---

[6] Ealey had indicated moments earlier that he desired to appeal from the trial court's denial of his motion to suppress.

tion, the following transpired:

> THE COURT: I know that Count I [trafficking in cocaine] is punishable by ten to 30 years and Count II [possession of more than one ounce of marijuana] would be punishable . . . from one to ten years and Count III [exceeding the speed limit] will be punishable up to 12 months.
>
> I'll just go ahead and let you know right now, Mr. Ealey, . . . because it doesn't matter what the State is recommending. At the end of a bench trial I can do whatever I want to do and it's the same thing after a jury trial.
>
> If you want to go forward with your bench trial, I'll tell you what I'll do, I'll give you the minimum, which is ten years to serve and a $200,000 [fine] on Count I. I'll give you five years to serve on Count II to run concurrent and 12 months to serve on Count III to run concurrent and then like I said, I'll go ahead and grant you a supersedeas bond. . . . Do you understand what I'm saying?
>
> THE DEFENDANT: I understand.
>
> THE COURT: If you want to go forward with a jury trial . . . I don't care . . . but I can take into consideration the fact that the time of the court is being used to — if the jury finds you guilty. Now, if they find you not guilty, you walk out the door. But if they can find you guilty I can take into consideration other factors. Usually during a jury trial I find out a lot more information about a case. The minimum you're going to get if a jury finds you guilty is ten years and the maximum you could get could be, which I am not bound by anything I said I would do at the end of a bench trial, the maximum you could get would be 31 years — no, excuse me, 41 years.
>
> So I guess my question is, what do you want to do, I don't care, but I need you, it's your decision, you've got to make the decision. Your lawyer can't make the decision, I don't know who that is sitting behind you but she —
>
> THE DEFENDANT: It's my sister.
>
> THE COURT: . . . She can't make the decision for you. You can get advice from them but you've got to be the one to make the decision.

After a brief pause in the proceedings, the court stated that it needed an answer "in 30 seconds." Ealey then asked the court questions about the supersedeas bond, and the matter was discussed

in detail. The court again asked Ealey for his decision. After more pauses in the proceedings, the court asked Ealey for a final decision — whether he was waiving his constitutional right to a jury trial and electing to have the court decide the case without a jury. Ealey responded that "this was just dumped on me this morning." The court replied that Ealey had had "plenty of time to think about it," and again inquired whether Ealey wanted a jury trial or a bench trial. Ealey stated: "We'll do the bench trial." This colloquy followed:

> THE COURT: You waive your constitutional right to a jury trial?
> THE DEFENDANT: Yes.
> THE COURT: Are you doing that freely and voluntarily? In other words, has anybody threatened you to do this?
> THE DEFENDANT: No.
> THE COURT: Is anybody coercing you to do this?
> THE DEFENDANT: No.
> THE COURT: Has anybody promised you any benefits to get you to do this?
> THE DEFENDANT: No.
> THE COURT: All right. I do accept your waiver of a jury trial and we will go forward with a bench trial.

After the stipulated bench trial, the court found Ealey guilty of the charged crimes. The court sentenced him to ten years on Count I, five years on Count II (concurrent with Count I), and twelve months on Count III (concurrent with Count I). It also imposed a $200,000 fine and granted a supersedeas bond.

The parties have cited, and we have found, no authority directly addressing the issue Ealey raises here. In the context of the voluntariness of a guilty plea, the Supreme Court of the United States has held that the plea affects three constitutional rights, including the right to trial by jury, the Fifth Amendment right against self-incrimination, and the right to confront witnesses.[7] As to a waiver of Fifth Amendment rights, voluntariness requires "a free and deliberate choice rather than intimidation, coercion, or deception."[8] Regarding guilty pleas, the Supreme Court of Georgia recently held

---

[7] *McCarthy v. United States*, 394 U. S. 459, 466 (I) (89 SC 1166, 22 LE2d 418) (1969); see generally *Brookhart v. Janis*, 384 U. S. 1, 7-8 (86 SC 1245, 16 LE2d 314) (1966) (discussing the constitutional rights affected by a guilty plea).

[8] *Colorado v. Spring*, 479 U. S. 564, 573 (II) (B) (107 SC 851, 93 LE2d 954) (1987) (citation and punctuation omitted).

in *Pride v. Kemp*[9] that

> [j]udicial participation in plea negotiations is prohibited as a constitutional matter when it is so great as to render a guilty plea involuntary. A guilty plea must be knowingly and voluntarily entered. . . . Due to the force and majesty of the judiciary, a trial court's participation in the plea negotiation may skew the defendant's decision-making and render the plea involuntary because a defendant may disregard proper considerations and waive rights based solely on the trial court's stated inclination as to sentence.[10]

Although *Pride* involved the voluntariness of a guilty plea, the reasoning in that case is compelling here, as the instant case involves the voluntariness of the waiver of a jury trial right which, as noted above, is one of the constitutional rights affected by a guilty plea.[11]

In this case, the trial court's remarks were made in the course of obtaining Ealey's waiver of his right to a jury trial. It is clear from the transcript that the trial court made some effort to discharge its duty to ensure that the waiver was knowing, intelligent and voluntary.[12] But the court also remarked that if Ealey opted for a jury trial, it could take into consideration the fact that the court's time was being used; that the court usually learned more about a case with a jury trial; and that Ealey faced the possibility of a longer sentence following a jury trial than that being offered by the court pursuant to a bench trial; the court announced its intention to bestow upon Ealey benefits (namely, minimum sentences and an appeal bond) in exchange for his waiver of the right to a jury trial.[13]

Thus, the court went beyond ascertaining whether Ealey's waiver of the constitutional right to a jury trial was knowing and intelligent, and involved itself in a process that should have been between Ealey and his attorney. Here, the court participated in the decision-making process, invoking "the force and majesty of the judiciary."[14] Viewing the comments made by the court in this case in the context of the circumstances under which Ealey made his

---

[9] 289 Ga. 353 (711 SE2d 653) (2011).

[10] Id. at 354. Accord *McDaniel v. State*, 271 Ga. 552, 553-554 (2) (522 SE2d 648) (1999).

[11] See *McCarthy*, supra.

[12] See *Brown*, supra.

[13] See *People v. Collins*, 26 Cal.4th 297, 309 (1) (c) (27 P3d 726) (2001). Compare *Smith v. State*, 375 Md. 365, 397 (825 A2d 1055) (2003) (jury trial waiver held not involuntary where defendant elected bench trial in exchange for concessions when the defendant's decision resulted from bargaining between defense counsel and the prosecutor, independent of any representations of leniency or harshness by the trial judge).

[14] See *Pride*, supra.

decision, we conclude that there is a substantial likelihood that Ealey was unduly influenced by the court's comments to waive his right to a jury trial.[15]

Accordingly, the state has failed to carry its burden of showing that Ealey's jury trial waiver was voluntary,[16] and the trial court's finding that the waiver was valid was clearly erroneous. Because a harmless error analysis cannot be applied to the waiver of a jury trial, reversal is required.[17] As stated above, Ealey may be retried.

*Judgment reversed. Smith, P. J., Barnes, P. J., Mikell and McFadden, JJ., concur. Andrews and Dillard, JJ., dissent.*

ANDREWS, Judge, dissenting.

This record shows that the trial court offered Ealey a sentence of ten years to serve, a fine, and a supersedeas bond if he waived his right to a jury trial. But this record also shows, beyond any dispute, that the trial court never threatened Ealey with a heavier sentence if he proceeded to a jury trial. On the contrary, the trial court said only that if a jury found him guilty, the trial court "[could] take into consideration other factors" and that "the maximum you could get could be . . . 41 years." After an extensive discussion, Ealey agreed to a bench trial, and the trial court proceeded to a detailed confirmation of that agreement on the record.

The majority concedes that the issue here is not whether Ealey's waiver was knowing or intelligent, but whether, despite the obvious signs of both these qualities in the record before us, it was "coerced" nonetheless. As the majority also concedes, we are well-advised to look to abundant Georgia precedent in the closely related context of guilty plea proceedings. The majority turns to the very recent decision of the Supreme Court of Georgia in *Pride v. Kemp*, 289 Ga. 353 (711 SE2d 653) (2011), and concludes that this decision authorizes its conclusion. On the contrary, the trial court in *Pride* made the bald threat that "If I tried the case and he was found guilty I would give him the maximum[, and] I would stack the sentences." Id. at 353. It was on this basis, and not concerning a mere description of possible outcomes, that the Supreme Court reversed the habeas court's denial of that defendant's petition. Id. at 354 (defendant "heard the trial court repeatedly state that it *would impose a longer sentence* if [he] went to trial" and that the trial court "would prefer that [he] go to trial" so that the court could " 'give [him] what I

---

[15] See *Skomer v. State*, 183 Ga. App. 308, 309-310 (358 SE2d 886) (1987) (concerning guilty plea).

[16] See *Balbosa*, supra.

[17] Id. at 575 (2).

would really like to give him' ' ").

As *Pride*'s comparison citation to one of this Court's myriad cases affirming a guilty plea suggests, nothing approaching such a threat appears in this record. On the contrary, this trial court "made no statement as to the sentence that would be imposed" if Ealey declined a bench trial, and this trial court never "threaten[ed]" Ealey with a stricter sentence. *Pride*, 289 Ga. at 354, citing *Works v. State*, 301 Ga. App. 108, 111 (3) (686 SE2d 863) (2009). In fact, if this trial court had *not* advised Ealey of the maximum possible sentence for his crimes, his choice to forego a jury trial might well have been neither knowing nor voluntary, although we have frequently upheld guilty pleas even when this information is less clear than it might have been. See *Johnson v. State*, 298 Ga. App. 197, 199-201 (1), (2) (679 SE2d 763) (2009) (affirming denial of motion to withdraw guilty plea even when counsel's advice to defendant that he was subject to a maximum sentence was not on the record, and when the trial court "thoroughly ascertained on the record that Johnson's plea was voluntary and knowing").

For all these reasons, the trial court did not err when it found Ealey's waiver of a jury trial valid. I therefore dissent.

I am authorized to state that Judge Dillard joins in this dissent.

DECIDED JULY 14, 2011.

*Jonathon J. Majeske*, for appellant.

*Tracy Graham-Lawson*, District Attorney, *Luana Popescu*, Assistant District Attorney, for appellee.

