**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**September 25, 2013**

# In the Court of Appeals of Georgia

A13A1223. TALTON v. THE STATE.

RAY, Judge.

Bryan Talton was charged in a 13-count criminal indictment , and after a bench trial, he was convicted of two counts of statutory rape (OCGA § 16-6-3), four counts of child molestation (OCGA § 16-6-4 (a)), and three counts of aggravated child molestation (OCGA § 16-6-4 (c)).[1] He appeals from his conviction and sentence, and from the denial of his motions for new trial, alleging that he did not knowingly, voluntarily, and intelligently waive his right to a jury trial, and that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

---

[1] Talton was acquitted of two counts of rape and received a directed verdict of acquittal as to an additional rape count (OCGA § 16-6-1) and a count of aggravated sexual battery (OCGA § 16-6-22.2).

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that Talton committed the above-named offenses against three girls. The evidence shows, inter alia, that Talton touched A. B.'s private parts with his penis, fingers and mouth; penetrated her vagina such that she bled; and forced her to perform oral sex on him. These crimes occurred when A. B. was in kindergarten until she was in seventh grade, while he was living in her home and in a relationship with her mother. He threatened to hurt or kill her if she told anyone. The evidence also shows that when A. B.'s first cousin, J. W., was nine years old, Talton, inter alia, touched J. W.'s private parts with his penis or hand. He threatened to hurt her if she told anyone. Additionally, the evidence shows, inter alia, that when A. B.'s half-sister, whose initials also are A. B., was 11 or 12 years old, Talton put his mouth on her private parts and penetrated her vagina with his penis. Talton does not challenge the sufficiency of the evidence.

Talton went to trial on January 27, 2009. At that time, Talton's attorney told the court that, against his advice, Talton wanted a bench trial. Talton told the court that he understood he had an absolute right to a jury trial, and knew that if he waived that right, the trial court would hear and rule on the evidence presented. After opening statements and before any witnesses were sworn, however, the State said that it would

2

not consent to a bench trial and insisted on a jury trial. Talton indicated, through his lawyer, that he still wanted a bench trial, but the trial court continued the case.

The bench trial resumed on March 9, 2009, wherein Talton's trial counsel again stated that he had advised his client to have a jury trial, but that Talton insisted on a bench trial. Talton confirmed this to the trial court. Talton stated that he had discussed his decision with his trial counsel , that he understood that the trial judge would listen to witnesses and to his own testimony, and that the trial judge would decide his guilt or innocence, as well as his sentence. The State then told the court that it would not object to Talton waiving his right to a jury trial because he had been fully informed of all his rights. The bench trial proceeded.

1. Now, after his conviction, Talton argues that he did not knowingly, voluntarily, and intelligently waive his right to a jury trial. He argues that there is no evidence establishing that he knew the difference between a jury trial and a bench trial. He argues that he did not understand that there would be a process of jury selection, that the State did not present any extrinsic evidence at the motion for new trial hearing, and that the State has not otherwise met its burden of proving a knowing, voluntary, and intelligent waiver.

3

A criminal defendant must personally and intelligently participate in the waiver of the constitutional right to a trial by jury. When the purported waiver of this right is questioned, the State bears the burden of showing that the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.

(Citation omitted.) *Whitaker v. State*, 256 Ga. App. 436, 439 (2) (568 SE2d 594) (2002). Further, "[t]he question of whether a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted by this [C]ourt unless such determination is clearly erroneous." (Citation and punctuation omitted.) Id. "In Georgia, it is well-settled that the 'clearly erroneous' standard for reviewing findings of fact is equivalent to the highly deferential 'any evidence' test." (Citations omitted.) *Reed v. State*, 291 Ga. 10, 13 (3) (727 SE2d 112) (2012).

Here, despite Talton's argument that the State presented no extrinsic evidence of the voluntariness of his plea, the record is by no means silent. *Whitaker*, supra. Prior to opening statements, Talton, in response to questions from the trial court,

4

stated that he understood he had an absolute right to a jury trial and that if he waived that right, the trial court would hear and rule on the evidence presented. He also testified that his waiver was voluntary, that he had not been pressured, and that his lawyer advised him against a bench trial. Then, at the later date on which the bench trial actually took place, Talton stated in response to the court's questions that he wanted to proceed without a jury, that he was not threatened or coerced into that decision, that he was not taking any medications and had not been prescribed medication that he failed to take, that he was not under a doctor's or mental health professional's care, and that he was not under the influence of alcohol. He stated that the private attorney he hired had advised him to proceed to a jury trial, but that he did not wish to, although he understood he had an absolute right to a jury trial. He explained his decision was due to his fear of "the reactions of a jury, the mind-set, the possibilities of them being put in that exact role and/or knowing someone in that role as well as, you know, in essence of the allegations themselves, I myself would personally prefer a bench trial." When the trial court asked, regarding his decision to proceed with a bench trial, "This is the same choice that you made six weeks or two months ago when we started this? . . . You haven't wavered on this issue? You have not changed your mind?" Talton responded, "No, Ma'am, your honor." He also stated

that he had talked about the bench trial versus jury trial with his trial counsel, and that he understood that the trial judge would listen to witnesses and to Talton's own testimony, and would decide his guilt or innocence, and his sentence.

We have determined that "[a] defendant's consent need not be in a particular, ritualistic form. Since form is unimportant, the only real issue is whether appellant intelligently agreed to a trial without a jury." (Citation and punctuation omitted.) *Brown v. State*, 277 Ga. 573, 574 (2) (592 SE2d 666) (2004). In instances where the information given to, and elicited from, a defendant was similar to that in the instant case, i.e. the testimony showed that the defendant had discussed a bench trial with counsel, had not been threatened or coerced to waive his right to a jury trial, was not under the influence of drugs or alcohol, and was voluntarily choosing a bench trial, the defendant's waiver of his rights was valid. *Turnbull v. State*, 317 Ga. App. 719, 726-727 (2) (c) (732 SE2d 786) (2012) (defendant's waiver was knowing and voluntary, and counsel was not ineffective, where trial court received oral assurances from defendant that he wanted a bench trial, had discussed this with counsel, had not been threatened or coerced, was not under the influence of drugs, and was making a voluntary decision). Accord *Watson v. State*, 274 Ga. 689, 690-691 (2) (558 SE2d 704) (2002) (waiver of rights upheld where defendant told trial court on the record

6

that he wished to waive jury trial and proceed with bench trial, and where defendant's counsel stated that he had discussed with defendant whether to proceed with bench trial versus jury trial).[2]

Talton, citing *Ealey v. State*, 310 Ga. App. 893 (714 SE2d 424) (2011), also argues that his decision was not voluntary because the trial court "heavily advocated in favor of proceeding without a jury," thus influencing his choice. At the initial trial date, when the State objected to proceeding with a bench trial after Talton requested such, the trial court, after learning the victims' ages, asked the prosecutor if he wanted to "spare them a jury trial" and also said, after pointing out that a number of jurors would be disqualified because of personal experiences with molestation, that "it may be more efficient to proceed without a jury *if Mr. Talton is waiving his right to a jury*. And not requiring the girls to testify in front of a jury is, I think, really in their best interest." (Emphasis supplied.)

---

[2] Talton's argument that the trial court should have inquired further into whether he understood that there would be a process of jury selection is unavailing, given the court's on-the-record statements, in his presence, that it is "because so many of the jurors have had their own personal experiences of being molested or having a family member molested that *we spend a lot of time picking a jury*" and "50 percent of the jurors will have been either molested themselves or have friends or family members that have been molested. And we wind up *having to disqualify a number of them for that reason before we can even start*." (Emphasis supplied).

*Ealey* is distinguishable from the instant case. In *Ealey*, the defendant first stated that he wanted a bench trial, but after listening to the lawyers and the court discuss evidentiary stipulations, he changed his mind, telling the court that he had not understood his attorney before and that he wanted a jury trial. Id. at 894-895. The trial court told the defendant that if he chose a stipulated bench trial instead, the court would give him a fine and the minimum sentences for his crimes and grant him a supersedeas bond to allow him to leave jail pending appeal. Id. at 895-896. The court also reminded him that if he went before a jury, it would take up the court's time and that the court could assign him any sentence – up to and including the maximum – and "stated that it needed an answer 'in 30 seconds.'" Id. at 896. The trial court then asked Ealey if he had been coerced or promised any benefit to waive his right to a jury trial, to which Ealey responded, "No." Id. at 897. We found that "the court participated in the decision-making process, invoking the force and majesty of the judiciary" and, thus, that Ealey's waiver of a jury trial was not voluntary. (Punctuation and footnote omitted.) Id. at 898.

Here, the record shows that the trial court made its aforementioned statements about a bench trial's efficiency and benefits to the victims after *Talton* chose a bench trial, thereby undercutting Talton's argument about improper use of the "force and

8

majesty of the judiciary." Id. The trial court made no promises of reduced sentencing or any other benefit to Talton, nor did it urge Talton to choose a bench trial or tell him he risked an increased sentence if he chose a jury trial. Compare *Pride v. Kemp*, 289 Ga. 353, 354-355 (711 SE2d 653) (2011) (in case involving voluntariness of a guilty plea, habeas court's denial of defendant's petition was reversed where trial court threatened him with a longer sentence if he went to trial). See, e.g., *Skomer v. State*, 183 Ga. App. 308, 309-310 (358 SE2d 886) (1987) (court improperly participated in plea negotiations when it stated that it would consider giving defendants probation if they pled guilty). Further, in the instant case, unlike in *Ealey*, the trial court was addressing its comments to the prosecutor, not to Talton. Here, the court's statements did not to amount to participation that rendered Talton's decision involuntary. Further, prior to the trial court's comments at issue here, Talton unequivocally stated that he wanted a bench trial. See *In the Interest of S. F.*, 312 Ga. App. 671, 674 (1) (719 SE2d 558) (2011) (juvenile court made no threats of longer term of confinement if defendant chose not to go to trial). "Although the burden is on the State to prove that [Talton] personally, intelligently, and voluntarily waived his right to trial by jury, the record supports the trial court's finding that [Talton] consulted with his attorney and made an intelligent [,voluntary,] and knowing decision to waive this right."

(Citations and punctuation omitted.) *Wingfield v. State*, 226 Ga. App. 448, 449 (3) (486 SE2d 676) (1997).

2. Talton contends that he received ineffective assistance of counsel. To show ineffective assistance of counsel, a defendant is required to establish, pursuant to *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), that

> counsel's performance was deficient and that the deficient performance was prejudicial to his defense. Both the performance and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact. In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this [C]ourt upholds the trial court's factual findings unless they are clearly erroneous; we review the trial court's legal conclusions de novo. If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, it is not incumbent upon the reviewing court to examine the other prong.

(Punctuation and footnotes omitted.) *Turnbull*, supra at 724 (2).

(a) Talton argues that his attorney failed to give him an adequate explanation of the consequences of waiving his right to a jury trial. For the reasons discussed in Division 1, infra, this argument cannot succeed. *Turnbull*, supra at 726-727 (2) (c) (counsel found effective where he confirmed that he talked with defendant about a bench trial versus jury trial and that the defendant knew the final decision was

10

defendant's to make; defendant told trial court that he wanted a bench trial, had discussed this with counsel, had not been threatened or coerced, was not under the influence of drugs, and was making a voluntary decision).

(b) Talton argues that he would not have waived his right to a jury trial had counsel not been operating under a conflict of interest. Talton testified at the motion for new trial hearing that because his lawyer charged higher fees for a jury trial and his relatives were paying for his lawyer, that he chose a bench trial for financial reasons. He alleges that this created a conflict of interest.

Talton did not raise the conflict of interest argument below. "[I]t is well settled that issues neither raised nor ruled on in the trial court cannot be raised for the first time on appeal." (Punctuation and footnote omitted.) *Robertson v. State*, 287 Ga. App. 271, 273 (4) (651 SE2d 198) (2007).

*Judgment affirmed. Doyle, P. J., and McFadden, J., concur.*