309 Ga. 102
FINAL COPY

S20A0133.  GLOVER v. THE STATE.

McMILLIAN, Justice.

Appellant DeAndre Tobias Glover was convicted of malice murder and making a false statement in connection with the shooting death of Mario Williams.[1] Following the trial court's denial of his motion for new trial, Glover appeals, arguing that his trial counsel was ineffective and that the trial court erred in admitting

---

[1] Williams was killed on November 27, 2015. On March 9, 2016, a Chatham County grand jury indicted Glover and Brandon Miller for malice murder, felony murder predicated on robbery, and aggravated assault. Glover was separately indicted for making a false statement, and Miller was separately indicted for felony murder predicated on possession of a firearm by a convicted felon and for possession of a firearm by a convicted felon. Miller pleaded guilty to robbery by sudden snatching in exchange for testifying against Glover at trial.

Glover was tried alone from April 30 to May 3, 2018. The trial court directed a verdict of acquittal on the felony murder count, and a jury found Glover guilty on all other counts. The trial court sentenced Glover to serve life in prison for malice murder and to serve five years consecutive for making a false statement. The remaining count was merged for sentencing.

Glover filed a motion for new trial on May 7, 2018, which he amended through new counsel on October 25, 2018. Following a hearing, the trial court denied Glover's motion (as amended) on June 12, 2019. Glover filed a notice of appeal to this Court, and this case was docketed to the term beginning in December 2019 and thereafter submitted for a decision on the briefs.

hearsay testimony. Finding no error, we affirm.

1. Viewed in the light most favorable to the jury's verdicts, the evidence at trial showed that in the early morning hours of November 27, 2015, Glover and his co-indictee Brandon Miller met up while walking to a Savannah gas station convenience store. When the two reached the store, Miller was approached by Williams, a homeless man to whom Miller, a dealer of crack cocaine, had previously sold drugs. Williams sought to trade Miller a cell phone for crack cocaine. Miller declined Williams's offer, and he and Glover proceeded into the convenience store, where each purchased a fountain drink in a cup with a straw. While in the store, Miller encountered Julius Larry, an acquaintance whom he knew from middle school, and he asked Larry for a ride to another part of town to pick up a female friend of Miller's. Larry agreed to give Miller a ride in exchange for gas money and permitted Glover to ride along.

The three exited the gas station, and Miller initially got into the front passenger seat of Larry's vehicle, while Glover got into the rear passenger-side seat. The two swapped places, however, because

Miller assumed his female friend would not want to sit in the back seat with a man she did not know. The rear passenger-side window was broken and stuck in a half-open position. Larry was in the driver's seat "messing with the music" and not paying attention to Miller and Glover.

According to Miller, who testified at trial, he called out to Williams, who had remained in the store's parking lot, to bring the cell phone over to Larry's car and trade the phone for crack cocaine. When Williams approached the car, Miller snatched the cell phone from him and ducked down in the seat just as Larry was pulling out of the parking lot. Williams reached into the car and, attempting to grab the phone, briefly ran along with the car as it pulled away. Then, Glover shot him.[2] Miller testified that he looked up to see the bullet flash in front of his face, as Glover had reached into the backseat to shoot out the half-open window. Larry did not see the shooting but testified that he heard the gunshot and then heard

---

[2] The medical examiner testified that Williams's cause of death was a gunshot wound to the head.

Miller exclaim, "Damn, why you just kill that man?" Miller testified that "when [he] look[ed] up, [he] was like, man, you just killed that man. What the f*ck? You just killed that man." Larry stopped his car in the middle of the road just outside the parking lot and told Miller and Glover to get out of the car; upon exiting the vehicle, Miller and Glover ran in separate directions, leaving their drink cups behind in the car. Larry parked his car on a nearby side street and then returned to the gas station to ask the clerk to call the police so that Larry could explain that he was not involved in the shooting.

When police officers arrived on the scene, Larry led them back to his car and allowed them to inspect it. The officers recovered Miller's and Glover's drink cups and straws from the vehicle; DNA testing revealed Miller's DNA on the straw in the cup recovered from the front-seat cup holder and Glover's DNA on the straw in the cup recovered from the rear-seat cup holder, consistent with the co-indictees' initial seating positions. Officers also recovered surveillance video recordings from the convenience store that showed, from multiple angles, the entire series of events leading up

to Williams's shooting, as well as the shooting itself; the surveillance video was played for the jury at trial.

From information provided by Larry, police officers were able to identify Miller and Glover as suspects. Both Larry and the convenience store clerk on duty at the time of the shooting were asked to view a six-person photographic array. From this array, Larry identified Miller and Glover as the two men who were in his car when Williams was shot, and the convenience store clerk identified Miller and Glover as the men shown on the surveillance video purchasing drinks and then getting into Larry's car. Glover was apprehended by federal marshals approximately one month after the shooting and was interviewed by Savannah Police Department detectives. During his interview – a video-recording of which was played for the jury during trial – Glover claimed that he was not at the convenience store on the night of the shooting and that he was, instead, in the company of a woman named Kiki. After his DNA was matched to the drinking straw recovered from Larry's vehicle, Glover was charged with making a false statement to police.

Glover's main theory of defense at trial was that Miller was the shooter. Glover extensively cross-examined Miller, who testified on the State's behalf, about Miller's prior convictions, as well as his motivation for testifying. Glover also attempted to show that Miller had a motive to shoot Williams. Further, while cross-examining Larry, Glover implied that Larry was armed on the night of the crime and that Larry was the shooter, while insinuating that Larry and Miller were good friends who were attempting to cover for each other. Glover also argued as much in closing. Glover did not testify in his own defense.

Though not enumerated as error by Glover, as is consistent with our customary practice in murder cases, we conclude that the evidence as summarized above was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Glover was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve

any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

2. Glover argues that his trial counsel rendered ineffective assistance by failing to object when, during closing argument, the prosecutor improperly commented on Glover's failure to testify at trial and his right to remain silent and right to counsel. To succeed on this claim, Glover must demonstrate both that his trial counsel's performance was professionally deficient and that he was prejudiced by that deficient performance. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To establish deficient performance, [Glover] must overcome the strong presumption that his counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way in the light of all of the circumstances." *Chavez v. State*, 307 Ga. 804, 809 (2) (837 SE2d 766) (2020) (citation and punctuation omitted). And to demonstrate prejudice, Glover must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Id. (citation and punctuation omitted). "We need not address both parts of the *Strickland* test if [Glover] makes an insufficient showing on one." *Redding v. State*, 307 Ga. 722, 726 (2) (838 SE2d 282) (2020).

Glover contends that his trial counsel should have objected to the following portion of the prosecutor's closing argument, which addressed the charge of making a false statement:

> One thing [Glover] could do is invoke and [say] I just don't want to talk to you guys anymore. Instead he just goes video schmideo. Nope. He's still insisting he's not there. Because he doesn't know what else they know, right? He doesn't know there's going to be DNA. And, of course, he won't ever find out until much later.
>
> So he – though counsel wants to distance himself from this horrendous statement [–] is of all the things in America he could say, one of which is, no thanks. I want a lawyer, which you're allowed to say.[3]

Characterizing these remarks as "prohibited," Glover argues that

---

[3] We note that the prosecutor made a similar comment during his opening statement: "And in America one of the things you can do is invoke your rights and just not bother talking to the police, and another thing you can do is choose to speak to them. He went with option two, and he did give a statement." Glover did not object to this remark at trial, nor does he raise on appeal a claim of ineffective assistance based on his counsel's failure to object.

*any* comment upon the right to counsel or the right to remain silent is improper and objectionable. In support of this proposition, Glover cites only one case, *Anderson v. State*, 285 Ga. App. 166 (645 SE2d 647) (2007), but the facts of *Anderson* are clearly distinguishable from those present here. In *Anderson*, the trial court declared a mistrial after the prosecutor elicited on direct examination testimony from a police officer that the defendant, during a post-arrest interview, refused to sign a waiver-of-rights form and invoked both his right to remain silent and his right to counsel. Id. at 167. But *Anderson* does not stand for the sweeping proposition that any comment or evidence on the right to silence or right to counsel is per se improper, as Glover argues. Instead, it is argument or evidence about the defendant's *exercise* of those rights that is generally considered improper. See *Miranda v. Arizona,* 384 U.S. 436, 468 (III) n.37 (86 SCt 1602, 16 LE2d 694) (1966) ("[I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed

his privilege in the face of accusation."); *Doyle v. Ohio*, 426 U.S. 610, 619 (II) (96 SCt 2240, 49 LE2d 91) (1976) ("We hold that the use [even] for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment.").

Here, the prosecutor's comment cannot be construed as a comment on Glover's post-arrest exercise of his right to counsel and right to remain silent because Glover *did not* exercise either of those rights; rather, he chose to waive those rights and to make a false statement to police. See *Hill v. State*, 290 Ga. 493, 496 (3) (722 SE2d 708) (2012) ("[I]t is clear under the circumstances of this case that the officer's testimony [that defendant did not want to sign a written statement or make a recorded statement] did not constitute an impermissible comment on [appellant's] invocation of his right to silence. [Appellant] did not invoke his right to silence. On the contrary he waived it[.]" (citation and punctuation omitted)). The State commented on Glover's post-arrest waiver of his rights and the statements that Glover did make, which supported the charge of

making a false statement. Glover has pointed to no basis, nor can we discern one, on which counsel could have successfully objected to the prosecutor's comment about Glover's electing *not* to exercise his rights, and "failure to make a meritless objection to the State's closing argument is not evidence of ineffective assistance." *Gaston v. State*, 307 Ga. 634, 640 (2) (b) (837 SE2d 808) (2020) (citation and punctuation omitted).

3. Glover also complains broadly that the trial court erred by admitting testimony by the lead detective regarding what Larry, Miller, and Samuel Gholston[4] told him during the course of his investigation. However, Glover has failed both to specify which portions of the detective's testimony he contends were wrongfully admitted and to engage in legal analysis with respect to the testimony he is challenging. He merely argues that none of the detective's testimony regarding these three witnesses' statements

---

[4] Gholston testified at trial that he was a friend of Williams and was with Williams at the convenience store on the night of the crimes. Gholston witnessed the shooting of Williams from a distance but could not identify who fired the shot that killed Williams.

was admissible as prior consistent statements and instead "constituted 'pure hearsay evidence,' which should not have been admitted at trial." Our review of this claim is thus significantly hampered. As we have emphasized before, "this Court is not required to scour the record for support for an appellant's arguments." *Davis v. State*, 306 Ga. 140, 144 (3) (829 SE2d 321) (2019).

Turning to the error alleged, Glover argues that the trial court erred by admitting the detective's testimony as evidence of the three witnesses' prior consistent statements. OCGA § 24-6-613 (c) provides:

> A prior consistent statement shall be admissible to rehabilitate a witness if the prior consistent statement logically rebuts an attack made on the witness's credibility. A general attack on a witness's credibility with evidence offered under Code Section 24-6-608 [evidence of character and conduct of witness] or 24-6-609 [impeachment by evidence of conviction of a crime] shall not permit rehabilitation under this subsection. If a prior consistent statement is offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive, the prior consistent statement shall have been made before the alleged recent fabrication or improper influence or motive arose.

See also OCGA § 24-8-801 (d) (1) (A) (an out-of-court statement is not hearsay if the declarant "testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is admissible as . . . a prior consistent statement under Code Section 24-6-613").

As to Larry, the detective testified about what Larry told him on the night of the crimes, within hours of the shooting. Larry testified at trial and was cross-examined by Glover, who attacked Larry's credibility by suggesting that there were inconsistencies between what Larry told police on the night of the shooting and what he testified to on direct examination. Glover also questioned Larry about his relationship with Miller, implying that the two were close friends and that Larry had developed a motive to protect Miller after Miller was arrested and charged with murder; Larry refuted these implications. Because the detective testified about what Larry told him mere hours after the shooting, weeks before Miller was arrested and charged with murder, the testimony served to rebut both

Glover's implication that Larry fabricated his account of the crime and his attack on Larry's credibility. Pretermitting whether Glover preserved for appellate review his objection to the detective's testimony regarding Larry's statement, there was no error in admitting the detective's testimony under the circumstances described above. See *Sawyer v. State*, 308 Ga. 375, 390 (2) (c) (839 SE2d 582) (2020) (witness's prior consistent statement admissible to rebut implication that witness's pre-trial statement differed from her trial testimony); *Dorsey v. State*, 303 Ga. 597, 603 (3) (814 SE2d 378) (2018) (no error in admitting witness's prior consistent statement, where, while cross-examining witness, defendant implied that witness fabricated his testimony and suggested that witness's trial testimony and his prior statement were inconsistent).

Turning to Glover's contentions regarding Miller's and Gholston's statements, our review of the record shows that Glover failed to object to the detective's testimony pertinent to these two witnesses. As such, his argument is not preserved for ordinary appellate review, and our review is confined to plain error. To

establish plain error, Glover must demonstrate that:

> (1) there was an error that [he] did not affirmatively waive; (2) the error was obvious; (3) the error affected [his] substantial rights, which means [he] must demonstrate that it likely affected the outcome of [his] proceedings; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

*Spence v. State*, 307 Ga. 520, 525 (2) (837 SE2d 334) (2019). See also *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). Glover has not met this high standard.

In regard to Miller, the detective testified about what Miller said shortly after being taken into custody in December 2015. Though Glover argues that this testimony was inadmissible because Glover did not raise against Miller "any affirmative charges of recent fabrication . . . or improper motive," this claim is clearly belied by the record. Miller testified at trial and was subject to cross-examination by Glover, who attacked his credibility and suggested through questioning that Miller was actually the shooter. Glover also questioned Miller extensively regarding the plea agreement he entered into with the State after he made the statements at issue,

in which he agreed to testify against Glover in exchange for the State's dismissing all charges against Miller and waiving recidivist punishment when he pleaded guilty to a single charge of robbery by sudden snatching. "[Q]uestioning a witness about whether he would receive a lesser sentence as part of a plea deal if he agreed to testify against a defendant is a classic example of an implication of improper motive for testifying," and prior consistent statements are properly admitted to rebut a charge of improper motive. *Abney v. State*, 306 Ga. 448, 454 (3) (a) (831 SE2d 778) (2019) (citation and punctuation omitted). See also *Bolling v. State*, 300 Ga. 694, 701 (3) (797 SE2d 872) (2017) (explaining that, by questioning a witness regarding his plea deal with the State, a defendant "implicitly argued" that the witness had an improper motive to testify and that the witness's prior consistent statements predating the improper motive were therefore admissible to rehabilitate his credibility). Thus, any error in admitting the detective's testimony regarding Miller's prior statements was neither clear nor obvious.

Finally, even assuming that the admission of the detective's

testimony regarding Gholston's interview statement was erroneous, we conclude that there is no plain error because Glover has not shown that this testimony had any effect on the result of his trial. The detective testified only briefly about Gholston's statement, and the detective's testimony in this regard was offered to highlight the inconsistencies in Gholston's statement and to demonstrate the unreliability of his account. Moreover, the State presented strong evidence against Glover, including surveillance video, eyewitness testimony, DNA evidence placing Glover at the crime scene, and the false alibi Glover gave police. See *Harris v. State*, 302 Ga. 832, 835 (2) (809 SE2d 723) (2018) (no plain error where evidence of defendant's guilt was "strong"). Accordingly, this claim also fails.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 16, 2020.
Murder. Chatham Superior Court. Before Judge Morse.
*Robert L. Persse*, for appellant.
*Meg E. Heap, District Attorney, Jerome M. Rothschild, Jr., Abigail B. Long, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.