NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 9, 2022

S22A0707. DUGAR v. THE STATE.

BOGGS, Chief Justice.

In 2017, Rita Mary Dugar shot and killed Jon Trevor Townley at the home of Dugar's ex-boyfriend, Juandrago Carter, in Covington. Dugar called 911 and was arrested at the scene. According to Dugar, she accidentally shot Townley while attempting to fire a warning shot during a melee involving Townley, Carter, and two other individuals, Shane Dobbs and Sarah Smith. At a 2021 bench trial, the court convicted Dugar of felony murder, aggravated assault, and a firearm-possession offense. She appeals, asserting four enumerations of error, all related to her waiver of a jury trial.[1]

---

[1] The crimes occurred on February 28, 2017. On May 5, 2017, a Newton County grand jury indicted Dugar for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a

Dugar contends that: (1) the original trial judge made remarks at a bond hearing that unduly influenced her decision to waive her right to a jury trial and, citing OCGA § 17-8-57, contends that the trial judge improperly commented on the merits of her case; (2) the State failed to show that her waiver of a jury trial was knowing, voluntary, and intelligent; (3) her trial counsel was ineffective for failing to advise her of her right to revoke her waiver of a jury trial after the case was reassigned to a new judge; and (4) counsel's actions denied her the right to revoke her waiver of a jury trial. For the reasons that follow, we affirm.[2]

---

felony. At a bench trial from February 23 to 24, 2021, the court found Dugar not guilty of malice murder but guilty of the remaining counts. The trial court sentenced Dugar to imprisonment for life for felony murder and to a consecutive term of five years on probation for the firearm possession conviction; the court merged the aggravated assault charge into the felony murder conviction. Dugar filed a timely motion for new trial, which she amended with new counsel on June 25, 2021. After a hearing on August 12, 2021, the trial court denied the motion on December 29, 2021. Dugar filed a timely notice of appeal directed to the Court of Appeals, which properly transferred the case to this Court on February 10, 2022. The case was docketed in this Court for the April 2022 term and submitted for a decision on the briefs.

[2] As Dugar does not challenge the sufficiency of the evidence to support her convictions, we note only those portions of the record necessary to address her claims of error. We no longer routinely review evidentiary sufficiency sua sponte, except with respect to murder convictions resulting in the death penalty. See *Davenport v. State*, 309 Ga. 385, 398-399 (4) (b) (846 SE2d 83)

1. Dugar first asserts that the original trial judge's remarks during an initial bond hearing unduly influenced her to waive her right to a jury trial, rendering the waiver involuntary. This claim is meritless.

(a) Two months after the shooting and before Dugar was indicted, the original trial judge presided over a bond hearing. The prosecutor summarized the facts of the case and asked that the court deny bond because Dugar was "facing . . . possibly being charged with malice murder and felony murder" and had attempted to contact Carter multiple times from the jail about his statement to police. The judge stated that he was less concerned about the risk of flight than the possibility of witness intimidation or collusion, and the public defender, who was representing Dugar at the time, said that Dugar was willing to have no contact with the witnesses to the shooting. The judge then had the following exchange with counsel for the parties:

COURT: Because nobody else was charged, which I'm not

(2020).

3

sure how you all do that and I don't know enough about it. This murder happened – well, this incident occurred, the death occurred we shall say in February . . . . Less than 60 days ago.

DEFENSE COUNSEL: She's been in custody since the time, which was . . . February 28th, and she is willing to remain away from any of those individuals. Judge, just to give you a little bit more insight as to the kind of the relation of these folks, Ms. Dugar was only there with the other individuals, she was not part of the actual argument, and [the prosecutor] is correct that she did cooperate with police, did let them know that she was the one that –

COURT: Well, she made the call apparently. You said 911 call; right?

DEFENSE COUNSEL: She did call 911.

COURT: Which is not the usual in the situation of an alleged murderer.

DEFENSE COUNSEL: That's correct.

COURT: So I heard all of that.

DEFENSE COUNSEL: She did . . . remain on the scene to talk to police and did admit that she was trying to fire a warning shot to try to break up the argument.

COURT: I know. This is what we're going to do. All right. I'm not going . . . to grant a bond today and rather than there being a denial of record I'll withhold ruling thereon. I hope, [prosecutor], you all are going to look at this as you mentioned felony murder and malice murder you may look at it the other way. . . . This is something that might be better viewed as manslaughter . . . based on the snippet that I've gotten involved and she made the call. All right. So I'm saying as you all review it, you know . . . don't scan it, but do that as well. Let's withhold my ruling on the bond. Okay. Give you all a chance to flesh out more facts. Because I'm with you, I don't know how people go to a

4

fight and the only one that gets . . . arrested is her. And especially talking about felony murder. . . . And underlying certainly I presume was the robbery or whatever – the theft that they were seeking –
STATE: Aggravated assault, Your Honor.
COURT: All right. So in any event, you all flesh it out. That's what you all get paid the big bucks for.

At a second bond hearing a month later, after Dugar had been indicted, the attorneys reminded the original trial judge of his earlier statement at the first bond hearing, and the prosecutor provided more information to the court, including further details of Dugar's recorded calls from the jail to Carter. The judge denied Dugar bond:

> COURT: It's kind of hard to swallow that. Okay. She made a call after the prelim [that is, the first appearance hearing in magistrate court] to a witness. . . . [T]hat's a problem for me. . . . It's kind of hard to swallow that. . . . She made a call on the day of the prelim to a witness she had just heard in court. . . . That's not what innocent folks do. And then to say on the call that we have to get our story straight to better help me to do that. Now, you can take that and you can spin it anyway you want to, but there's not any way I can spin it. Bond denied. We'll let it fall where it may. File your speedy [trial motion] and we'll get a trial. I've got speedies in the record so we'll find out where they are. So bond denied.

Attempting to clarify the basis for the bond ruling, the prosecutor

5

asked, "[T]he bond is denied for intimidating and influencing witnesses?" The judge replied, "And for a risk to the community, you can note both."

Later the same month, new counsel filed an entry of appearance on behalf of Dugar, and six months later filed a motion for dismissal under the immunity statute, OCGA § 16-3-24.2, on the basis of justification by self-defense. The original trial judge presided over an evidentiary hearing in April 2018, at which Dugar, Carter, Smith, a sheriff's deputy, and a Social Circle police officer all testified regarding the confrontation.[3] The trial court denied the motion from the bench, stating, "The Court's going to find that there has been not in any way sufficient showing that this motion should be granted, and I will deny the defendant's motion for dismissal for immunity from prosecution as so pled in this matter."

At an October 2019 status conference before a senior judge, the prosecutor said that Dugar's attorney had recently informed the

---

[3] Dobbs did not testify at the immunity hearing; a sheriff's deputy testified that the State had been unable to locate him.

State that he planned to seek a bench trial. The prosecutor asked "for a week or so to make that determination [i.e., whether the State would agree to Dugar's request for a bench trial] and then get with obviously [the original trial judge's] office to schedule that bench trial." At a third hearing in April 2020, the original trial judge declined to reconsider his denial of bond to Dugar, and the possibility of having a bench trial rather than a jury trial was again discussed. The judge instructed Dugar's counsel to

> go over it and . . . Ms. Dugar can have a chance now to understand this is a very important decision for her to . . . make. And I certainly want her to have every opportunity to talk to [her counsel] before she signs [a waiver of her right to a jury trial.] This is no longer theory; she will be waiving her constitutional right to a jury trial in this matter. All right. I'll see you in two weeks.

Two weeks later, the original judge presided over a status conference held by video, at which the parties discussed in detail Dugar's desire to waive her right to a jury trial. The judge questioned Dugar regarding the waiver, and Dugar said that she had signed a formal waiver of her right to a jury trial; that she had discussed it with her attorney; that she understood it was her choice,

7

not her attorney's choice; that nobody had put any force or pressure on her to sign the waiver; and that she was "knowingly, voluntarily, and willingly" waiving her right to a jury trial. The judge asked Dugar if she had any questions, and she responded, "No, Your Honor." Dugar filed her formal waiver on the same day, and a bench trial was set for July 21, 2020.

Before the trial could be held, however, the original trial judge died, and Dugar's case was reassigned. The State informed the successor trial judge that the parties had agreed to a bench trial, and the trial took place from February 23 to 24, 2021. Dugar did not testify, but she called three witnesses who testified to her peaceful character. The trial court found Dugar not guilty of malice murder but guilty of the remaining charges, and later denied Dugar's motion for new trial.

(b) Dugar claims that the original trial judge's remarks at the initial bond hearing regarding the facts of the case and the possible charges against her exerted "undue influence" on her decision to waive her right to a jury trial, therefore rendering her waiver

involuntary. She relies heavily upon *Ealey v. State*, 310 Ga. App. 893, 898 (714 SE2d 424) (2011), where the Court of Appeals held that the State failed to meet its burden to show that a defendant's waiver of his right to a jury trial was voluntary. But the facts in *Ealey* bear no resemblance to this case.

In *Ealey*, after the denial of a motion to suppress, Ealey waived his right to a jury trial in open court but then immediately sought to revoke it, stating that he had not understood and that he wanted a jury trial. See id. at 894-895. The trial court then addressed Ealey directly, stating that if he waived his right to a jury trial, the court would grant a supersedeas bond, "which would let you out of jail pending appeal" of his motion to suppress. Id. at 895. The court added, "I'll tell you what I'll do, I'll give you the minimum [sentence if convicted] . . . and then like I said, I'll go ahead and grant you a supersedeas bond." Id. at 896. The court also pointed out that at a jury trial the court would "find out a lot more information about a case," and that in sentencing Ealey if a jury found him guilty, the court was "not bound by anything I said I would do at the end of a

9

bench trial, the maximum you could get would be 31 years – no, excuse me, 41 years." Id. Then, "[a]fter a brief pause in the proceedings, the court stated that it needed an answer [from Ealey] 'in 30 seconds.'" Id. When Ealey protested that "this was just dumped on me this morning," the court responded that Ealey had had "plenty of time to think about it." Id. at 897. Ealey then waived his right to a jury trial, and the court found him guilty after a bench trial. Based on these circumstances, a majority of the Court of Appeals concluded that the trial court's ruling that Ealey voluntarily waived his right to a jury trial was clearly erroneous. See id. at 899.[4]

Even assuming that Dugar's undue-influence theory could support a claim that her waiver of a right to a jury trial was not voluntary, and that the circumstances in *Ealey* amounted to sufficient undue influence to render the waiver there involuntary, the circumstances here do not raise even remotely similar concerns.

---

[4] Two judges dissented, reasoning that the trial court never coerced or threatened Ealey. Id. at 900 (Andrews, J., dissenting).

Here, the original trial judge's remarks at the pre-indictment bond hearing involved no threats or promises; did not mention a bench or jury trial, much less pressure Dugar to choose one over the other or threaten Dugar with a heavier sentence if she chose a jury trial and the jury found her guilty; and were directed to counsel rather than to Dugar personally. See *Kennedy v. Hines*, 305 Ga. 7, 11 (2) (823 SE2d 306) (2019) (noting in the context of a guilty plea that statements that are factual or that involve no threats, pressure, or indication of a preference for a particular decision "simply [are] not comparable to the types of threats, statements about a trial court's desire to sentence a defendant harshly, or statements coaxing defendants to plead guilty, that we have said render a guilty plea involuntary." (Citations and punctuation omitted.)).

Moreover, the judge's remarks and Dugar's decision to waive her right to a jury trial occurred over three years apart, separated by intervening hearings that resulted in decisions unfavorable to Dugar: the original trial judge twice denied Dugar's requests for bond and also denied her motion for immunity after receiving

11

extensive testimony from multiple witnesses. The original trial judge's statements here in a completely unrelated hearing three years earlier are not comparable with the statements made in *Ealey* at the time of the defendant's decision, which placed the defendant under pressure to decide immediately and signaled a preference for the defendant to waive his rights.

Whatever Dugar may have believed or hoped regarding the original trial judge's remarks explaining the reasons for continuing the initial bond hearing, more than three years before Dugar waived her right to a jury trial and nearly four years before her bench trial was conducted by a different judge, the successor trial judge did not clearly err in rejecting Dugar's assertion that those remarks rendered involuntary her waiver of a jury trial. Accordingly, this claim lacks merit.

(c) Dugar also claims that the original judge's remarks at the initial bond hearing were improper regardless of when they were made, arguing from OCGA § 17-8-57 that comments expressing a judge's opinion as to the merits of a case cannot be made "during any

phase of any criminal case." But that statute does not apply to comments made outside the presence of the jury. See OCGA § 17-8-57 (a) (1) ("It is error for any judge, during any phase of any criminal case, to express or intimate *to the jury* the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." (Emphasis supplied.)). See also *Carson v. State*, 308 Ga. 761, 766-767 (3) (843 SE2d 421) (2020). Moreover, even in the presence of a jury, "the remarks of a judge explaining a reason for his ruling are neither an expression of opinion nor a comment on the evidence." (Citations and punctuation omitted.) *Horton v. State*, 310 Ga. 310, 320 (3) (a) (849 SE2d 382) (2020). The original trial court's comments explaining his reasons for continuing the initial bond hearing thus would not have violated OCGA § 17-8-57, even if it applied here. This claim is therefore without merit.

2. Dugar next asserts that the State failed to show that she knowingly, voluntarily, and intelligently waived her right to a jury trial. We disagree.

"Because the right to a jury trial is a fundamental

constitutional right, the burden is on the State to show that [a defendant] made a knowing, intelligent and voluntary waiver of that right." (Citation omitted.) *Balbosa v. State*, 275 Ga. 574, 575 (1) (571 SE2d 368) (2002). Moreover, to ensure that a defendant has waived the right to a jury trial "voluntarily, knowingly and intelligently," the trial court should conduct a colloquy with the defendant personally. Id.[5]

As explained above, after an earlier hearing at which the original trial judge cautioned Dugar that the waiver of her right to a jury trial was "a very important decision" and emphasized the importance of conferring with her counsel before deciding, the same judge presided over a status conference held by video, at which the parties discussed in detail Dugar's desire to waive her right to a jury trial and to be tried by the court without a jury. The original judge then questioned Dugar about her decision, and based on her

---

[5] *Agee v. State*, 311 Ga. 340, 343-344 (2) (857 SE2d 642) (2021), characterizes the State's burden as "beyond a reasonable doubt," citing *Balbosa*. Although Balbosa does not expressly reference that standard, no party has asked that we re-examine either precedent, and we need not do so to decide this case.

14

answers, he found that she had knowingly, voluntarily, and intelligently waived her right to a jury trial. This was sufficient to meet the State's burden to show that Dugar's waiver was adequate. See *Watson v. State*, 274 Ga. 689, 690-691 (2) (558 SE2d 704) (2002) (statement of defendant in open court that he knew he had a right to a jury trial and that he wished to forgo that right, in addition to counsel's statement that he had discussed the matter with defendant, was sufficient to show that defendant "personally, knowingly, voluntarily, and intelligently waived his right to a trial by jury").

Moreover, Dugar testified at the motion for new trial hearing that as the trial began she "believed that having a bench trial was the correct thing to do." She further acknowledged that her complaint was about the outcome of the trial rather than the decision to waive her right to a jury trial. Indeed, aside from her claim of "undue influence," Dugar makes no argument that her jury trial waiver was anything but knowing, voluntary, and intelligent. Accordingly, this claim is without merit.

3. Dugar also contends that she was denied the effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, Dugar must show both that her trial counsel's performance was deficient and that she suffered prejudice as a result. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

To establish deficient performance, Dugar must overcome a strong presumption that her trial counsel's conduct "falls within the broad range of reasonable professional conduct" and demonstrate that her counsel "performed in an objectively unreasonable way, considering all circumstances and in the light of prevailing professional norms." (Citation and punctuation omitted). *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015). To establish prejudice, Dugar must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U. S. at 694 (III) (B). An appellant must satisfy both prongs of the *Strickland* test, and if the showing fails as to one prong, "it is not incumbent

16

upon this Court to examine the other prong." (Citation and punctuation omitted.) *Smith*, 296 Ga. at 733 (2). The trial court's factual findings will be affirmed unless clearly erroneous. See id.

Dugar asserts that her attorney's performance was deficient because he "did not know that the Appellant had the right to revoke her jury waiver and therefore, advised her to proceed with a bench trial in front of her newly assigned judge." However, this assertion is belied by the record. Dugar testified at the motion for new trial hearing that she discussed the possibility of a bench trial with her attorney, and that when the case was assigned to a new judge, she and her attorney discussed

> putting in something to have that waiver revoked or withdrawn or whatever the terminology is and he said he was going to do some digging into how the new judge . . . handles cases . . . and he was going to weigh the pros and cons and I told him that he's my counsel and I trust him, whichever way he feels is better suited or which would help my case would be the way that we'd go.

And Dugar's trial counsel testified at the motion for new trial hearing that he discussed having a bench trial rather than a jury trial with Dugar "multiple times," including after the original trial

judge died. Dugar characterizes trial counsel's testimony as stating that he "'could not find any case law that would support' the Appellant revoking her jury waiver," asserting that counsel "*therefore* advised [Dugar] to proceed with a bench trial in front of her newly assigned judge." (Emphasis supplied.) That characterization is inaccurate. The record shows that trial counsel testified that he did not find any case law supporting an automatic right to withdraw a jury trial waiver because the presiding judge had passed away. Trial counsel further testified that he advised Dugar to proceed with a bench trial not because she could not revoke the waiver, but because the shooting "was just a horrible accident" and he thought that a judge would agree with that conclusion, noting that the successor trial judge agreed at least in part by acquitting Dugar of malice murder.

Moreover, the successor trial judge concluded in denying Dugar's motion for new trial that trial counsel's advice to Dugar regarding the waiver of a jury trial was not unreasonable, in light of the facts and circumstances of the case and counsel's research.

18

"[T]he reasonableness of strategic decisions of counsel – in this case, whether to advise his client to waive [her] right to a jury trial – are to be examined from counsel's perspective at the time of trial and under the particular circumstances of the case." (Citations and punctuation omitted.) *Butler v. State*, 313 Ga. 675, 683 (4) (a) (872 SE2d 722) (2022). Particularly since "trial counsel's decisions relating to strategy and tactics are not judged by hindsight," we cannot say that trial counsel's reasons for advising Dugar to waive her right to a jury trial were "objectively unreasonable considering all the circumstances and in the light of prevailing professional norms." (Citations and punctuation omitted.) Id. at 684. Dugar has not shown deficient performance, and her ineffective assistance of counsel claim accordingly fails.

4. Finally, Dugar contends that the trial court denied her right to revoke her waiver of a jury trial. However, in her brief on appeal, Dugar has not included any citation to the record showing that she ever attempted to revoke her waiver of a jury trial, and our examination of the record likewise reveals no evidence that she

attempted to revoke it. "It is well established that the burden is on the party alleging error to show it by the record." (Citations and punctuation omitted.) *Suggs v. State*, 310 Ga. 762, 767 (5) (854 SE2d 674) (2021). Moreover, "this Court is not required to scour the record for support for an appellant's arguments." (Citation and punctuation omitted.) *Glover v. State*, 309 Ga. 102, 107 (3) (844 SE2d 743) (2020). Accordingly, this claim provides no basis for reversal. Id.

*Judgment affirmed. All the Justices concur.*